146 So.2d 779 (1962)
Carrie H. NUSSEY, a Widow, Lloyd C. Nussey and Chester M. Nussey, Appellants,
v.
E.B. CAUFIELD, Rose M. McDevitt and E.M. Clark, Appellees.
No. 2862.
District Court of Appeal of Florida. Second District.
August 29, 1962.
Rehearing Denied November 26, 1962.
*780 Clyde H. Wilson, Sarasota, for appellants.
Edgar J. Johnston, Jr., Harrison & Johnston, Bradenton, for appellees.
ALLEN, Acting Chief Judge.
Appellants, plaintiffs below, filed suit in equity for rescission and cancellation of a deed and mortgage concerning a trailer park which had been sold to plaintiffs by defendant-appellees. The amended complaint upon which the case was tried was founded upon a claim of mutual mistakes between the parties in connection with the purchase and sale of said trailer park.
Defendants answered, denying the material allegations in the complaint and counterclaimed to foreclose the mortgage sought to be canceled by the complaint, said mortgage then being in default. Plaintiffs replied to the counterclaim for foreclosure, setting up in defense to said counterclaim the grounds relied upon in their complaint for rescission and cancellation. The issue to be tried as framed by the pleadings thus involved the existence of any mutual mistakes between the parties which would justify rescission of the contract for sale of the trailer park and cancellation of the deed and mortgage executed in connection therewith.
A hearing was held and extensive testimony taken, with numerous exhibits being introduced by both sides. In his final decree, the chancellor found in favor of defendants, denied the prayer for rescission and cancellation of the deed and mortgage and decreed the foreclosure of the mortgage sought by defendants in their counterclaim. A monetary decree entered in favor of defendant E.M. Clark, the selling broker, is not involved in this appeal.
The only material question for determination in this appeal is whether or not the chancellor misapprehended the legal effect of the evidence as a whole in denying the equitable relief sought in the complaint.
The very comprehensive final decree entered by the chancellor states the case and his findings which are germane to this appeal as follows:
"THIS CAUSE, having come on before the Court to be heard upon the *781 amended Complaint of the plaintiffs, and the answers thereto of the defendants, E.B. CAUFIELD, ROSE M. McDEVITT and E.M. CLARK, and the counter claim of the defendant, E.B. CAUFIELD, and the counter claim of the defendant, E.M. CLARK, and the answers thereto of the plaintiffs, and the Court having heard the testimony of the parties hereto and their respective witnesses and argument of counsel; and it appearing to the court that the substance of the Complaint, the material allegations of which were denied by the defendants' answers, alleges that the plaintiffs purchased from the defendants, E.B. CAUFIELD and ROSE M. McDEVITT, a certain trailer park located in Manatee County, Florida, commonly known as the Villa Del Sol Trailer Park, and that incident to the purchase of said trailer park, and in accordance with the contract between the parties, a part of the purchase price was evidenced by a promissory note from the plaintiffs in the principal amount of $99,746.00, payable to the defendant, E.B. CAUFIELD, and that the plaintiffs contend that in connection with said purchase, there were numerous mutual mistakes which occurred between the parties and as a result, the plaintiffs are entitled to rescind the transaction and return the parties to the same position as they were before the transaction, said mutual mistakes being as follows: that the property was represented to plaintiffs as being an entirely different type of property, in a different condition and the nature of the property itself was entirely different from that which had been represented to them by the defendants in that plaintiffs purchased a trailer park which could be used for both the rental of trailer spaces and the sale of trailer spaces, and that after purchasing said trailer park, the plaintiffs maintained that it was impossible for them to either rent or sell trailer spaces in said property due to the zoning regulations in effect in Manatee County, Florida, as same pertain to said property; that in particular, Block A of the plat of Lake Side Trailer Town, as per plat thereof recorded in Plat Book 11, page 27 of the Public Records of Manatee County, Florida, which was a part of the property purchased, could not be used for any purpose due to the fact that said property actually constituted a buffer zone as required by the Zoning Regulations of Manatee County, Florida, in connection with trailer parks; that the sewerage system in connection with said trailer park was represented to the plaintiffs that same would take care of 100 trailer spaces and that this was not true and that both, the defendant, E.B. CAUFIELD, and the plaintiffs believed same to be true and that in addition thereto, that said sewerage system was approved by the State Board of Health so that it would take care of 100 spaces; that the mortgage which was given by the plaintiffs to the defendant, E.B. CAUFIELD, did not contain any release clause so as to allow the plaintiffs to sell lots in said property, free and clear of said mortgage so as to enable the plaintiffs to obtain sufficient funds to pay on said mortgage indebtedness when same became due; that plaintiffs were prevented from obtaining an attorney at low to represent them in connection with the purchase of said property by the defendant, E.M. CLARK, as agent of the Seller, and that as a result thereof, plaintiffs were unable to obtain the necessary legal advice in connection with the purchase of said trailer park and were forced to rely on the representations made to them by the defendants, E.B. CAUFIELD and E.M. CLARK, which resulted in the mutual mistakes which occurred; that the remaining allegations in the amended complaint are of no consequence and even if same be true, would not be a sufficient basis for rescission of the *782 transaction on the basis of mutual mistake; and from the testimony and evidence produced by the plaintiffs and defendants and their witnesses, the Court makes the following findings:
"1. That the equities are with the defendants and against the plaintiffs and the plaintiffs are not entitled to the relief prayed for in their amended complaint.
"2. That the plaintiffs acquired title to that certain property known as the Villa Del Sol Trailer Park containing 16.5 acres, more or less, located in Section 19, Township 35 South, Range 18 East, as more particularly described in the amended complaint, pursuant to a contract for sale entered into between the plaintiffs and the defendant, ROSE M. McDEVITT, and that prior to the purchase of said property, the plaintiffs and E.M. CLARK, at the insistence of the defendant, E.M. CLARK, made an investigation with the Manatee County Zoning Department and the Manatee County Health Department to determine the existing zoning of said property and whether same was in compliance with the existing trailer park regulations in effect in Manatee County, and after said investigation, discovered that said property was zoned part commercial, and part trailer park, and that the sewerage system, in the part that had been zoned trailer park, had not yet been completed nor had final acceptance of same been given by the Manatee County Health Department, nor had any license been given by the State of Florida Board of Health for the operation of a trailer park.
"3. That plaintiffs purchased said property with the full and complete understanding that said property was not yet fully completed or developed and that in order for the plaintiffs to make the necessary payments on the unpaid balance of the purchase price, it would be necessary for them to complete the undeveloped portion of the trailer park by dividing same into lots and blocks, and to complete the sewerage system in accordance with existing laws and regulations in order to provide sewerage for said undeveloped portion and that the plaintiffs, as evidence of their understanding of same, did in fact, assume that certain contract entered into by the defendant, E.B. CAUFIELD and MERLE GEOFFRION, registered engineer, as more fully appears from the plaintiffs' exhibit I, for the purpose of completing said sewerage system and the extension of said undeveloped portion of said trailer park.
"4. That part of the property which was purchased had been previously subdivided into a subdivision known as Lake Side Trailer Town, as per plat thereof recorded in Plat Book 11, Page 27 of the Public Records of Manatee County, Florida, and that while said plat may not have actually conformed to the zoning regulations of Manatee County, Florida in existence at the time same was platted, insofar as a buffer zone was concerned, nevertheless, same was accepted by the Board of County Commissioners of Manatee County, Florida, and that the acceptance of said plat creates a doubt that such zoning regulation could be enforced and therefore such alleged mutual mistake has no been proven, nor is it subject to be proven in this action, the County of Manatee not being a party hereto; that as a matter of fact, a trailer was located on said Block A at the time that plaintiffs purchased said property and plaintiffs placed their trailer on said Block A after they acquired title to the said property, and the Manatee County Zoning Department had knowledge of the existence of said trailers on said Block A and did not take any official actions to have said trailers removed as being in violation of the existing Manatee County *783 Zoning regulations; the Manatee County Zoning Department later issued a zoning clearance allowing trailers to be placed on said Block A as more specifically appears from defendants' exhibit 1.
"5. That none of the parties, prior to the entering into the negotiations for the sale of said property, discussed the possibility of including a release clause in the purchase money mortgage which was to be given to the defendant, E.B. CAUFIELD, as part of the purchase price of said property, and that it actually appears that the plaintiffs did not purchase said property with the idea of selling trailer lots, but rather purchased same with the idea of using same as a rental trailer park, and therefore, a release clause would not have been necessary.
"6. That the plaintiffs were given the opportunity at the time of the closing of the transaction between the parties to inspect all of the instruments in connection therewith and that said instruments were read to the plaintiffs and that said transaction was closed in accordance with the manner prescribed in the contract between the parties."
Our review of the testimony and exhibits appearing in the record leads us to conclude that the findings of the able chancellor were fully justified. The record clearly indicates that, whatever the status of the zoning ordinances in force at all times material, plaintiffs failed to establish convincingly that they were or would have been prevented from operating a rental trailer park on the premises in question in the same manner in which defendant-sellers were operating one at the time plaintiffs made their purchase. Further, the record shows that plaintiffs were fully apprised at the time of purchase as to the capacity and physical condition of the trailer park's sewer system.
Plaintiffs also complained that they were prevented from selling any of the trailer lots by the absence of a release clause in the mortgage. The record, however, totally fails to demonstrate that the parties bargained in any way for such a release clause. Plaintiffs' main purpose in acquiring the trailer park was to rent trailer lots not sell them. In this respect it is significant to note that there is no evidence concerning any agreement as to pro rata reduction of the mortgage indebtedness which would logically be a part of any release clause in the mortgage pertaining to the sale of individual trailer lots by the mortgagors.
In sum, plaintiffs have shown no more than they may have made a bad bargain in that their expectations at the time they purchased the trailer park did not materialize. Generally speaking, however, it is not the office of equity to shield a litigant from that which results from his own improvidence.
It has often been stated that rescission and cancellation are harsh remedies and are not lightly countenanced by the courts. Such relief when granted normally lies within the determination of the chancellor which must respond to the circumstances of each case. As in cases where reformation of an instrument is sought on the ground of mutual mistake of fact, a party seeking rescission and cancellation of an instrument on such a ground has the burden to present clear and convincing evidence that a mistake of fact was made in the transaction sought to be altered or abrogated. See Goodstone v. Shamblen, Fla.App. 1962, 141 So.2d 8; Old Colony Insurance Co. v. Trapani, Fla.App. 1960, 118 So.2d 850; Fletcher v. Moriarty, 1911, 62 Fla. 482, 56 So. 437.
The chancellor was justified in concluding from the evidence before him that plaintiffs had failed to carry this burden.
Under the circumstances of this case and in view of plaintiffs' failure to clearly show the existence of mutual mistake in the transaction sought to be rescinded, we *784 see no reason to disturb the lower court's decree.
The decree appealed from is affirmed.
Affirmed.
SMITH, J., and TAYLOR, HUGH, Associate Judge, concur.