293 So.2d 729 (1974)
GLADDING CORPORATION and Outdoor Sporting Goods Co., Appellants,
v.
Thomas A. REGISTER et al., Appellees.
No. 73-1400.
District Court of Appeal of Florida, Third District.
April 9, 1974.
Rehearing Denied May 20, 1974.
*730 Hall & Hedrick, Miami, for appellants.
Greene, Greene, Smith & Davenport, Jacksonville, for appellees.
Before BARKDULL, C.J., and CARROLL and HENDRY, JJ.
PER CURIAM.
Appellants, Gladding Corporation [hereinafter Gladding] and Outdoor Sporting Goods Co. [Outdoor], seek review of an order finding that the appellants failed to prove certain affirmative defenses and therefore were not entitled to rescission of a contract.
This litigation commenced upon the filing of an interpleader complaint by M. Lewis Hall, Jr., as escrow agent, who alleged conflicting claims to a fund. The appellees answered the complaint, crossclaiming against Outdoor and filing a third party complaint against Gladding. Appellees, sellers of a business, alleged that the appellants had breached the terms of a sales agreement and an employment agreement with appellee, Thomas Register. They sought recovery of the funds held in escrow as well as a judgment for $198,000 in damages.
Gladding and Outdoor each answered the third party and cross-complaints and by counterclaim and cross-claim sought rescission of the sales and employment agreement and a total of $350,000 in damages. As grounds therefor, the appellants affirmatively alleged fraud and misrepresentation of material facts by appellee, Register, in inducing the purchase of his business. In addition, appellants accused Register of a failure to use his best efforts under the terms of the employment contract.
The trial judge held a non-jury trial on the equitable issues raised in the counter-claims. Following the trial, the court entered the order now appealed. The court ruled that the appellants did not prove their affirmative defenses and denied the said defenses with prejudice. The judge also denied with prejudice the counterclaim seeking rescission of the contract, and ordered that the cause be set for a jury trial on the issue of damages incurred by Thomas Register.
Most of the facts germane to appellants' claim for rescission of the acquisition of Outdoor occurred in the now somewhat distant year of 1968. The evidence indicated that sometime in March or April of 1968, Register contacted Nicholas Christakos, vice president for Gladding, to explore the possibility of an acquisition by Gladding of Outdoor, then owned by Register.
The testimony and documentary evidence further revealed various contacts between Christakos and others representing Gladding and Register up until the closing which was held on September 11, 1968. Stated as briefly as possible, appellants maintain that Register at all times until closing made a series of oral and written representations painting a bright financial picture of Outdoor. Among these representations was Outdoor's ability to manufacture fishing rod handles and foregrips, which Gladding desired to supply another of its subsidiaries, U.S. Fiberglass.
Appellants contended that Register orally represented that Outdoor was a profitable business; that the business' earnings would pay for the business in one to three years; that he would net a profit of $30,000-$40,000 in 1968. Later, Register represented in a written financial statement of June 30, 1968 that Outdoor had a net profit of $11,991.24 as of that date, prior to payment of officers' salaries.
An agreement of sale was drawn up and entered into on August 15, 1968. Highly pertinent to this appeal is the language contained therein.
*731 The agreement at the outset provided that it was between Gladding and Outdoor as "the seller" and Register as "the share-holder." Thereafter, the contract states that the seller and the shareholder desired to sell to "a wholly-owned subsidiary of Gladding (the `Buyer')." Further in the same paragraph it is recited "... Gladding desires to so acquire said assets, subject to no liabilities, all upon the terms and conditions hereinafter set forth ..."
Thereafter, in paragraph 1.1 of the agreement is the following: "... [A]nd Gladding agrees, under the terms and conditions of this agreement, to cause the Buyer to purchase and to accept transfer ..." [Emphasis ours.] And, paragraph 1.3 again reads: "Gladding agrees to cause the Buyer to pay to the Seller for the Seller's Properties an aggregate amount of $150,000, subject to all the terms and provisions of this agreement."
Gladding formed a wholly-owned subsidiary, the GLC Corporation (to be the Buyer under the agreement), solely to acquire the assets of Outdoor. After the sale, GLC assumed the name Outdoor; also, Outdoor changed its name to "T A & G, Inc." one of the named appellees herein.
The evidence reflects that Gladding, primarily through Christakos, attempted to acquire further financial information on Outdoor. Among the data sought, were corporate income tax returns. However, Register failed to provide Gladding with this information prior to closing, apparently due to Register's recent change in accountants and some confusion in his corporate bookkeeping.
At the scheduled closing, however, Register did present to Christakos and to Abe Cogan, a C.P.A. employed by Gladding, a list of previously undisclosed debts which obviously alerted Gladding to the possibility that Outdoor's financial posture was not as firm as Register previously had projected.
Nevertheless, Gladding on the next day decided to proceed with the closing because, according to Cogan, the corporation was into its selling season and needed the rod handles which Register had promised to manufacture. Gladding, however, did manage to negotiate a reduced price and the earlier contract was amended.
The new price was $123,000, with $60,000 to be furnished at closing and thereafter $7,000 per year for nine years as reflected in nine promissory notes executed by GLC. Out of the $60,000, all the debts which Register had disclosed were to be paid and the balance held in escrow subject to further debts and preparation of the back tax returns. The employment agreement between Outdoor and Register likewise was re-negotiated to provide an annual compensation reduced from $25,000 to $15,000, with a bonus arrangement.
After the closing, in November 1968, Cogan received the tax returns. He testified that they reflected a disparity of about $160,000 from the June 30th financial statement. In addition, there was testimony adduced by the appellants that Register failed to manufacture the fishing rod handles, that in fact he lacked the competence to do so, that Register was inaccessible to his superiors, and that he drank while on the job. This was controverted by Register and other witnesses on his behalf.
However, the record clearly demonstrates that on December 12, 1969, Gladding, through its president J. Gerald Mayer, notified Register that his employment was terminated and the sales agreement was rescinded. But, it was not until April 16, 1971 when Outdoor filed its cross-claim for rescission and not until August 7, 1972 when Gladding filed its counterclaim seeking the same relief.
Two issues are raised by this appeal for our consideration. The first goes to the merits of the trial court's determination that rescission of the contract should be denied with prejudice.
*732 It is our conclusion that the court's determination on this issue was correct. One who asserts that he has been the victim of fraud and therefore is entitled to rescission of a sales agreement should assert his rights promptly and without delay. Tonkovich v. South Florida Citrus Industries, Inc., Fla.App. 1967, 202 So.2d 579; Rood Company v. Board of Public Instruction, Fla. 1958, 102 So.2d 139; see also, 5 Fla.Jur., Cancellation, Reformation, and Rescission of Instruments §§ 42, 43. Where fraud is asserted in the sale of a business enterprise, in measuring the right of a party to justifiably rely on the misrepresentations, a party must use reasonable diligence to protect his own interests. Fote v. Reitano, Fla. 1950, 46 So.2d 891. Moreover, since rescission is a harsh remedy, not favored in the law, relief usually lies within the determination of the trial court based upon the facts and circumstances of each case. Nussey v. Caufield, Fla.App. 1962, 146 So.2d 779.
The facts sub judice show that while the appellants accuse Register of various prevarications and intentional falsehoods, they nevertheless made no effore to rescind until fifteen months after the closing date of the acquisition. Assuming the appellants initially may have had the right to rescind, we think that under the facts of this case they have waived their right. See Tonkovich v. South Florida Citrus Industries, Inc., supra, Rood Company v. Board of Public Instruction, supra.
Next, we consider the second issue concerning Gladding's liability under the sales and employment agreement.[1] Appellees argue that the trial court was correct in ruling that Gladding was liable under the agreements.
It is conceded that Gladding formed GLC for the sole purpose of consummating the sale, acquiring the assets of Outdoor and presumably insulating Gladding from personal liability. It is also not contested that the negotiations culminating in the acquisition were conducted solely by Gladding with Register.
Nonetheless, we agree with the contention of Gladding that by the clear terms of the contract for sale it is not liable to the appellees and the contract is unambiguous.
We point out that the fact that one corporation, the parent, owns all of the stock of a subsidiary company does not erase the latter's identity as a legal entity, nor create any conclusions that the latter is only the alter ego of the former. St. Petersburg Sheraton Corp. v. Stuart, Fla. App. 1970, 242 So.2d 185.
In our view, the words employed in the agreement that Gladding would "cause the Buyer" to pay or to purchase do not constitute words of guaranty. Donnelly v. Marriott Corporation, Fla.App. 1972, 266 So.2d 183; Delta Air Lines, Inc. v. Wilson, Fla.App. 1968, 210 So.2d 761; Fla. Stat. § 673.416, F.S.A.
Nor does such language meet the requirement that a promise to pay a debt be expressed in a clear, unequivocal writing which is mandated by the Statute of Frauds, Fla. Stat. § 725.01, F.S.A. Eckman v. Brash, 20 Fla. 763 (1884), Delta Air Lines, Inc. v. Wilson, supra.
Therefore, that portion of the trial court's findings holding Gladding liable to the appellees under the sales and employment agreement must be reversed.
A remaining question has been raised by the appellants, with respect to their right to seek damages either for *733 fraudulent misrepresentation or for deceit, even if their claim for rescission is denied. See Marks v. Fields, 1948, 160 Fla. 789, 36 So.2d 612.
The record demonstrates that while there was some evidence presented to the trial judge on this question in opinion form,[2] the court would not permit testimony on the question of damages due to the fact that the appellants attempted to introduce accountant Cogan's compilations from Gladding's books and records. The court ruled that appellants must produce the original corporate records. Three days later, when the appellants attempted to place Cogan on the stand and introduce the original records, the judge disallowed it. The judge stated that the court's time was limited, and added the following explanation to appellants' counsel:
"Let me make one statement so that we understand each other. These books and records go to the damages. Your witness has testified under oath that damages were sustained. I am not going into the actual matter of damages. So, basically, at this point, it is premature, anyhow. In a damage trial, depending on how this comes out, you have the right to bring in the exact amount of damages that you sustained, but at this time you have testimony in the record sufficient to show that you lost a monetary amount of money; so there should be no problem with that to begin with."
We think there is merit to appellants' contention that they have not yet been given their day in court on the question of damages sustained as a result of any alleged fraud perpetrated upon them.
Since this case must be tried by a jury on the question of Register's alleged damages, we think that in fairness, the remaining appellant, Outdoor, should be permitted to offer evidence on the issue of damages allegedly sustained by it.
By way of summary, we hold: (1) the court was correct in holding that appellants were not entitled to rescission; (2) the court erred in finding appellant, Gladding, liable to the appellees, and Gladding is hereby relieved from the effect of the order appealed as well as subsequent proceedings to be held in this case; (3) at the jury trial on the issue of damages both the appellees and the remaining appellant, Outdoor, should be permitted to offer evidence on the amount of damages each party incurred.
Therefore, for the reasons stated and upon the authorities cited and discussed, the order appealed is affirmed in part and reversed in part and remanded for further proceedings consistent with this opinion.
Affirmed in part; reversed in part, and remanded.
NOTES
[1] The appellees previously appealed the issue to this court following a motion to dismiss by Gladding, which was granted. Register v. Gladding Corporation, Fla.App. 1972, 263 So.2d 858. Therein, we reversed, stating that appellees' complaint was sufficient to require a response from Gladding on the question of whether or not Gladding had fully performed under the terms of the contract.
[2] For example, Mayer testified that Outdoor sustained $95,000 in damages and Gladding, $100,000 as a result of the alleged misrepresentations. However, this testimony was only a round figure, given by the witness after he was not permitted to refer to an accountant's report.