375 So.2d 1089 (1979)
Peter STEINBERG and Ina Steinberg, His Wife, Appellants,
v.
BAY TERRACE APARTMENT HOTEL, INC., a Florida Corporation, Appellee.
No. 79-236.
District Court of Appeal of Florida, Third District.
November 6, 1979.
Rehearing Denied December 13, 1979.
*1090 Eli Breger, North Miami Beach, for appellants.
Charles L. Neustein, Miami Beach, for appellee.
Before HENDRY, HUBBART and NESBITT, JJ.
HENDRY, Judge.
This cause has previously been the subject of an appeal[1] whereby this court reversed the trial court's dismissal with prejudice of Mr. and Mrs. Steinberg's complaint seeking rescission of a real estate contract based upon allegations that the vendor had misrepresented or had mistakenly represented that a particular apartment house purchased by the Steinbergs could be used for twenty-three unit efficiency apartments, when, as was later learned by the purchasers, it could be used for only 10 units under the Miami Beach zoning regulations. After remand for further proceedings, the cause evolved into a foreclosure action brought by the vendor/mortgagee on the purchase money mortgage, and a denial of default and a counterclaim for rescission and cancellation by the appellants.[2] Ultimately, the trial court entered its order which states in pertinent part:
"The contention of Mr. and Mrs. Steinberg is that the purchase and sale of the Bay Terrace Apartments was based upon the existence of 23 efficiency units, when in fact, there were 10 units.
"Two officials employed by the City of Miami Beach brought zoning files and testified as to the exhibits and violations. Based on exhibits # 1, 2, 3 and A, the Court finds that these matters were of public record and the matters contained therein were neither hidden nor concealed from the purchasers on or before May 4, 1977. The deposit receipt (exhibit 5) specifically refers to zoning violations noticed by the City of Miami Beach prior to May 4, 1977. The Court further finds that the Plaintiff received an occupations license (exhibit C) for 23 units ...
* * * * * *

*1091 "Peter Steinberg testified that the apartment building is fully rented, except the two lobby-units. He further testified that he voluntarily withheld payment of the mortgage payments due in October, November and December, 1977, but was paid by check dated December 14, 1977 (exhibit 13). These payments made pursuant to stipulation by the attorneys for the parties. The January, 1978 payment was admittedly late (exhibit B) and Bay Terrace Apartment Hotel, Inc. accelerated the note and mortgage balance.
"The testimony of the parties clearly indicated to this Court that both parties are dissatisfied with their relationship and that no equity was presented to forgive the late mortgage payment or deny acceleration and foreclosure of the default ...
"The Court considered the legal arguments of counsel and the case law cited by the Third District Court of Appeal in their reversal of the Final Order of Dismissal. The greater weight of the evidence does not show a failure of consideration for the purchase of the property due to zoning restrictions which the purchasers knew about ...
* * * * * *
"The Court also finds, the purchase money second mortgage involved herein, secures the real estate, and neither the note nor mortgage require personal guarantees. That the property in the past has suffered waste, and Peter Steinberg's own testimony indicates a hardship in maintaining the property under the present conditions of zoning restrictions.
"WHEREFORE it is ORDERED AND ADJUDGED as follows:
"1. Plaintiff, Bay Terrace Apartment Hotel, Inc., a Florida corporation, is due the following amounts under the note and mortgage sued on in this action.
* * * * * *
"2. Plaintiff holds a lien to secure the payment of the total sum against the property described as follows: Lot 24, Block 38, MIAMI VIEW SECTION ISLE OF NORMANDY according to the plat thereof as recorded in Plat Book 34 at Page 80 of the Public Records of Dade County, Florida, together with the building and improvements thereon, located at 1995 Bay Drive, Miami Beach, Florida, and together with the furniture, furnishings and equipment located therein, which lien is prior, paramount and superior to all rights, claims, liens, interests, encumbrances and equities of all defendants, and all persons, firms and/or corporations claiming by, through, under or against the said defendant or any of them, and the property will be sold free and clear of any claims of the said defendants.
"3. If the total sum with interest at the rate prescribed by law and all costs of this action accruing subsequent to this Judgment are not paid within three (3) days from this date, the Clerk of this Court shall sell the property at public sale . ..
* * * * * *
"5. On filing the certificate of title the clerk shall distribute the proceeds of the sale, so far as they are sufficient by paying: first, all of receivers fees, costs and attorney's fees, second, documentary stamps affixed to the certificate; third, plaintiff's costs and attorney's fees; fourth, the total sum due to plaintiff less the items paid plus interest at the rate prescribed by law from this date to the date of the sale; and by retaining any amount remaining pending the further order of this Court . ..
* * * * * *
"10. The defendants take nothing by their counterclaim, and the relief sought to rescind the purchase and sale of the property and cancel the mortgage and note is denied."
Appellants have raised two points on appeal, contending that the trial court erred in its rulings because (1) the buyer of an apartment building represented to contain twenty-three rentable units is entitled to rescind the transaction after the closing when it is discovered that it contains only 10 rentable units, and (2) under the facts of the case, it was inequitable to permit acceleration *1092 of the promissory note and foreclosure of the mortgage securing the note.
As to the first point, we refer to the oft-quoted, well-settled, broad generalization that a person to whom false representations have been made is not entitled to relief because of them if he might readily have ascertained the truth by ordinary care and attention, and his failure to do so was the result of his own negligence, and where the means of knowledge are at hand and are equally available to both parties, and the subject matter is equally open to their inspection; if one of them does not avail himself of those means and opportunities, he will not be heard to say that he was deceived by the other's misrepresentations. Davanzo v. Miami National Bank, 301 So.2d 797 (Fla. 3d DCA 1974); Ruwitch v. First National Bank of Miami, 291 So.2d 650 (Fla. 3d DCA 1974); Scocozzo v. General Development Corporation, 191 So.2d 572 (Fla. 4th DCA 1966). The record in the case sub judice reflects that the deposit receipt contract stated that the sale was subject to the restrictions and limitations of record common to the neighborhood; that the accompanying deposit receipt agreement referred to certain City of Miami Beach code violations as to two separate rooms, other than the twenty-three units, that were undersized; that appellants chose not to inspect the building and zoning records prior to the closing; that said records were available to them at all times; that, in fact, the seller made no specific representations with regard to zoning as to the twenty-three units; that at least up until the time the final judgment was entered, all twenty-three units were being rented and appellants were collecting that income; that appellants accepted such benefits of the contract and paid their monthly mortgage payments for four months after being officially notified of the violations; that it was not until five months after the notification by the City of Miami Beach authorities of the violations that appellants filed their original lawsuit seeking rescission.
Additionally, the remedy of rescission is clearly not favored by the courts, particularly when the complaining party has failed to promptly deny the contract as binding upon him and failed to follow a course of conduct manifesting a disavowal of it. In a cause involving a suit for rescission of a contract for the sale of land, Rood Company, Inc. v. Board of Public Instruction of Dade County, 102 So.2d 139, at 141-142 (Fla. 1958), our Supreme Court stated:[3]
"[I]t is not enough that one claiming rescission or cancellation because of a mistake allege merely that there was a mistake of material fact. He must also allege facts which show that such mistake did not result solely from the want of such care and diligence on his part as are exercised by persons of reasonable prudence under like circumstances... .
"Further, he must allege facts which show that upon discovery of the mistake he, with reasonable promptness, denied the contract as binding upon him and that thereafter he was consistent in his course of disavowal of it. For if, after acquiring knowledge of the mistake, he either remains silent when he should speak or in any manner recognizes the contract as binding upon him, ratifies or accepts the benefits thereof, he will be held to have waived his right to rescind. Thereafter, he will be bound by the contract in the same manner as if the mistake of fact had not occurred... .
"Rescission and cancellation are harsh remedies and therefore not favored by the courts. Courts of equity will not grant the remedy unless it clearly appears that the claimant is entitled thereto and has not by his own conduct waived his right to the relief claimed. Because of this view, this Court has held that slight circumstances indicating a purpose or intent of the claimant to waive the right will bar relief."
The Rood court further states, in quoting from an old but viable decision dealing with *1093 the same issue, Hendricks v. Stark, 99 Fla. 277, 126 So. 293, 297 (1930):
"One of the most familiar applications of the rule relating to the acceptance of benefits arises in the case of contracts. It has been repeatedly held that a person by the acceptance of benefits may be estopped from questioning the validity and effect of a contract; and, where one has an election to ratify or disaffirm a conveyance, he can either claim under or against it, but he cannot do both, and having adopted one course with knowledge of the facts, he cannot afterwards pursue the other."
We adopt the reasoning espoused in the foregoing opinions as applicable to the instant cause; the trial court's denial of the appellants' counterclaim for rescission or cancellation is affirmed.
The second point raised by appellants  to-wit, that the trial court improperly granted appellee's demand for acceleration of the promissory note and foreclosure of the mortgage, is unfounded. Under the provisions of the note and the mortgage securing it, appellants' monthly payments were due on the first of each month, with a fifteen-day grace period; once a given month's payment is delinquent and the grace period has elapsed, the mortgagee, under an acceleration clause such as exists in this case, may seek foreclosure. The entire record supports the trial court's ruling that no equitable basis for denial of the acceleration and foreclosure was presented by appellants. Campbell v. Werner, 232 So.2d 252 (Fla. 3d DCA 1970).
The order appealed is, therefore, affirmed in all respects.
Affirmed.
NOTES
[1] Steinberg v. Bay Terrace Apartment Hotel, Inc., 363 So.2d 58 (Fla. 3d DCA 1978).
[2] Subsequent to the appellate decision, the Steinbergs filed a notice of voluntary dismissal as to the former complaint and the trial court allowed the above-mentioned counterclaim to be filed and evidence heard on the action to foreclose the mortgage and the action for rescission and cancellation.
[3] See, also, Love v. Elliott, 350 So.2d 93 (Fla. 1st DCA 1977); Gladding Corporation v. Register, 293 So.2d 729 (Fla. 3d DCA 1974); Tonkovich v. South Florida Citrus Industries, Inc., 202 So.2d 579 (Fla. 2d DCA 1967); Mid-State Homes, Inc. v. Staines, 161 So.2d 569 (Fla. 2d DCA 1964).