542 So.2d 1014 (1989)
Javier ROSIQUE, Appellant,
v.
WINDLEY COVE, LTD., Etc., et al., Appellees.
No. 88-1599.
District Court of Appeal of Florida, Third District.
March 21, 1989.
Rehearing Denied May 23, 1989.
*1015 William J. Berger, for appellant.
Taylor, Brion, Buker & Greene and Arnaldo Velez, Miami, for appellees.
Before SCHWARTZ, C.J., and BARKDULL and JORGENSON, JJ.
PER CURIAM.
Javier Rosique appeals from a final judgment of the trial court granting rescission of a real estate contract, subsequent to closing, upon a finding of mutual mistake. For the following reasons, we reverse.
On October 30, 1985, Rosique entered into a contract with Eugenio Diaz for the sale of three acres of land improved by a small motel. The addendum to the contract contained the following provisions:
1. Buyer hereby agrees to purchase subject property in "as is" condition.
2. Seller represents that the subject property consists of approximately 3.00 acres of usable land and that this transaction also includes additional submerged lands. Buyer may have a survey prepared at his own cost to ascertain the above representations.
3. Seller represents that subject property has RU-7 usage. Buyer shall have 30 days from the date of execution and acceptance of this agreement by both buyer and seller to obtain a letter from Monroe County Building and Zoning Department confirming that said property has RU-7 usage and that at least 3 acres can be fully developed under the RU-7 classification. In the event that said property cannot be utilized under the RU-7 classification, buyers shall have the right to cancel this contract considering this transaction null and void and to obtain an immediate return of all escrow deposits made hereunder. Seller also represents that classification RU-7 permits the construction of a Motel of up to 25 units per acre.
Diaz's rights as purchaser were subsequently assigned to Eduardo Cantera who, in turn, assigned the rights to Windley Cove, Ltd., a Florida limited partnership which intended to build a seventy-five unit motel on the property. A closing scheduled for March 3, 1986, was postponed because Windley Cove could not confirm that the existing zoning would allow construction of twenty-five units per acre. After the postponement, an agent for Rosique secured a letter from the Monroe County Building Department. The letter confirmed that the property had motel zoning but was silent concerning the allowable unit density per acre. Windley Cove, although dissatisfied with the letter, closed on the property on June 19, 1986. After closing, Windley Cove expended $150,000 in an effort to change the zoning from what proved to be an allowable density of only fifteen units per acre. When its efforts proved fruitless, Windley Cove defaulted, triggering foreclosure actions. Windley Cove cross-claimed, alleging at trial that there had been a "mutual mistake" concerning the zoning density.
The trial court erred in finding that Windley Cove was entitled to rescind the contract. A party who seeks rescission of an instrument on the ground of mutual mistake has the burden to show by clear *1016 and convincing evidence that a mistake of fact occurred in the transaction. Nussey v. Caufield, 146 So.2d 779 (Fla. 2d DCA 1962). Facts must be alleged to show that, having discovered a mistake, the party denied the contract in a reasonably prompt fashion. Rood Co. v. Board of Public Instruction, 102 So.2d 139 (Fla. 1958). Testimony at trial by Cantera, Windley Cove's general partner, revealed that Cantera was aware of the zoning uncertainties well before closing but elected to proceed on the contract.
Q. [by Rosique's attorney] Sir, you mean to tell me between October 30, 1985, the date of the contract, and June 19, 1986, approximately eight months, you couldn't verify whether you could build the units that you wanted to build?
A. [by Cantera] I'm not trying to be facetious. You just told his Honor that you had title problems and all that. But, anyway, the answer is we paid over two hundred something thousand dollars.
Q. That is immaterial.
A. No, it isn't. We tried. The answer is no, we couldn't verify.
Q. Why didn't you back out of the deal then? You had 30 days to do it.
A. Because we, both of us, the buyer and the seller, were trying to make the deal go. And the reason was this: The County had rezoned the place and your client had failed to pay the Florida Restaurant Commission and it was no longer a hotel. He had no occupational license and it had never been operated as a hotel since he bought it. Therefore, that was the problem and that is the position the County is taking today.
Q. Were you aware of this problem?
A. I was aware of the problem.
Q. So why didn't you back out of the deal, if you were aware?
A. Because at that particular time we had spent so much money I felt if we were protected with the purchase money mortgage, that I would take my chances, and I did.
It is uncontroverted that Windley Cove had the right to cancel the contract if it could not verify the zoning. Having elected to "take a chance" and close, notwithstanding knowledge of the zoning problem, Windley Cove waived its right to rescind. Rood. Indeed, Windley Cove never raised the defense of mutual mistake until trial, almost two years after the closing.
The judgment granting rescission is reversed. The cause is remanded with directions to enter judgment in favor of Rosique on the rescission claim and, in accordance with the stipulations of the parties, to grant judgment in favor of Rosique on his foreclosure cross-claim.
Reversed and remanded with directions.
SCHWARTZ, C.J., and JORGENSON, J., concur.
BARKDULL, Judge, dissenting.
I respectfully dissent from the majority opinion and would affirm the final judgment of rescission.
The trial judge made, in part, the following findings of fact and conclusions of law.
"This action came on to be tried before the Court upon notice ...
* * * * * *
4. On October 30, 1985, Javier Rossique entered into a contract for sale and purchase of the subject property to Eugenio Diaz. Such contract among other things states:
2-Seller represents that the subject property consists of approximately 3.00 acres of usable land and that this transaction also includes additional submerged lands. Buyer may have a survey prepared at his own cost to ascertain the above representations.
3-Seller represents that the subject property has RU-7 usage. Buyer shall have 30 days from the date of execution and acceptance of this agreement by both buyer and seller to obtain a letter from Monroe County Building and Zoning (sic) Department confirming that said property has RU-7 usage and that at least 3 acres can be fully developed under the Ru-7 classification. In the event that said property cannot be utilized under the RU-7 classification, buyers shall *1017 have the right to cancel this contract considering this transaction null and void and to obtain an immediate (sic) return of all escrow deposits made hereunder. Seller also represents that classification RU-7 permits the construction of a motel of up to 25 units per acre.
* * * * * *
5. The rights arising from such purchase and sale contract together with all rights to the deposit placed with Antonio J. Soto were subsequently assigned to Windley Cove, Ltd., a Florida Limited Partnership.
6. At the time that this contract was signed, the property contained a seven (7) unit motel, but such was not operating.
7. The intent of the buyers in entering into the contract for sale and purchase and purchasing the contract was to develop the property and build a motel thereon containing 75 units. This was known at all times material by the contract vendor Javier Rossique.
8. Prior to the closing on the purchase and sale contract Windley Cove, Ltd., attempted to confirm that the existing zoning classification permitted the construction of a motel of up to 25 units per acre but was unable to do so.
9. A closing on the purchase and sale contract was scheduled for March 3, 1986. This did not occur because of the inability of Windley Cove, Ltd. to confirm that the zoning classification permitted the construction of 25 units per acre. An agent for Javier Rossique then assisted Mr. Eduardo Cantera of Windley Cove, Ltd., in his attempts to obtain this information. The agent procured and obtained a letter from the Department of Building and Zoning stating that the existing zoning permitted the use of the property as a motel. However, such letter does not state the existing zoning permitted the construction of 25 units per acre. The letter was delivered to Eduardo Cantera and a closing on the purchase and sale contract was then scheduled for June 19, 1986.
* * * * * *
11. The transaction was closed on June 19, 1986, on that date Windley Cove, Ltd., delivered an additional $240,000.00 to close the transaction. Windley Cove, Ltd. also executed and delivered a promissory note to Javier Rossique in the principal sum of $425,000.00, which note was secured by a mortgage on the subject property. The mortgage was filed for record in the public records of Monroe County, Florida, on June 24, 1988, and now appears in official records book 978 commencing at page 2220.
The promissory note specifically recites that it was delivered "as per and pursuant to the contract for sale and purchase dated October 31, 1985". The copy of the note reproduced in the mortgage also contains such recitation. The intent of the maker of the note was to incorporate by reference the provisions contained in the contract for sale and purchase dated October 31, 1985, and more particularly the provisions contained in paragraph 3 of the addendum. The note was accepted by Javier Rossique in this form.
Eduardo Cantera, the representative of Windley Cove, Ltd., closed the transaction in reliance upon the letter supplied him by Javier Rossique's agent and because the conditions of the contract were reaffirmed and incorporated into the promissory note and mortgage.
12. Subsequent to June 16, 1986, Windley Cove, Ltd., determined that 25 units per acre could not be built on the subject property. Such information was conveyed to Javier Rossique through his agents, and an attempt was made to resolve the matter amicably by the parties but they were unable to do so.
* * * * * *
14. The record demonstrates without dispute that Javier Rossique and Windley Cove, Ltd., labored under a mutual mistake concerning the availability of zoning which permitted the construction of a motel of up to 25 units per acre on the subject property which was material, indeed vital to the transaction.
Based upon the above and foregoing findings of fact the Court concludes:

*1018 (A) That it has jurisdiction over the parties and the subject matter of this action;
* * * * * *
(C) That Windley Cove Resort, Inc., is entitled to rescind the subject transaction because of a mutual mistake concerning the zoning classification of the property. Windley Cove, Ltd., is not entitled to other expenditures made by it for plans.
(D) That because a rescission is being ordered, title to the subject property will vest in Javier Rossique. This legal title will merge the equitable interest held by him as mortgagee and a judgment of foreclosure will not be necessary. Any payments made by Javier Rossique on account of the mortgages which encumber or which encumbered the subject property will benefit Javier Rossique because he will be the owner in fee simple of the subject property;
Accordingly, it is adjudged as follows:
* * * * * *
(2) That except as hereinafter provided, title to the subject property is hereby transferred to Javier Rossique free and clear of any claims, liens, or demands by or on behalf of Windley Cove, Ltd., Eduardo Cantera, Westwood Management Corporation, Phillip L. Fontanills, P.A., and all persons claiming by, through, under or against them since the filing of the lis pendens in this action.
(3) A judgment is hereby entered in favor of Windley Cove, Ltd., and against Javier Rossique in the sum of $310,000.00, together with interest at the statutory rate from June 19, 1986.
(4) Each party shall bear their costs and fees.
The major premise under which the parties labored was that if a new motel consisting of 75 units, or 25 per acre, could be erected on the 3 acres which were to be sold, Windley Cove, the ultimate buyer, would purchase. The seller represented that such a structure could be built. It turned out that this was erroneous. Therefore there never was a meeting of the minds for a purchase and sale. The entire transaction from the beginning was premised on this condition. Such a provisional condition was contained in the original contract, the purchase money note, and in the purchase money mortgage.[1]
The evidence is clear that it was not until after the closing that the parties ultimately determined that a 75 unit motel could not be built.[2]
There is ample, sufficient, competent evidence to support the trial judge in the exercise of his discretion in equity to order a rescission, and his act should not be overturned. Yost v. Rieve Enterprises, Inc., 461 So.2d 178 (Fla. 1st DCA 1984); Ganaway v. Henderson, 103 So.2d 693 (Fla. 1st DCA 1958). He merely returned the parties to their status quo prior to the execution of the purchase and sale agreement. This record will not support any ratification by the purchaser to continue with the transaction once he learned that he could not build a new facility with a density of 25 *1019 units per acre. This was the major premise of the transaction and when it fell, there was no meeting of the minds, and the trial court was correct in returning parties to their original positions.
NOTES
[1] As stated in the original contract:

"Seller represents that subject property has RU-7 usage. Buyer shall have 30 days from the date of execution and acceptance of this agreement by both buyer and seller to obtain a letter from Monroe County Building and Zoning (sic) Department confirming that said property has RU-7 usage and that at least 3 acres can be fully developed under the RU-7 classification. In the event that said property cannot be utilized under the RU-7 classification, buyers shall have the right to cancel this contract considering this transaction null and void and to obtain an immediate (sic) return of all escrow deposits made hereunder.
Seller also represents that classification RU-7 permits the construction of Motel of up to 25 Units per acre.
[2] As stated in the transcript:

"Q. Sir, you mean to tell me between October 30, 1985, the date of the contract, and June 19, 1986, approximately eight months, you couldn't verify whether you could build the units you wanted to build?
A. I'm not trying to be facetious. You just told his Honor that you had title problems and all that. But, anyway, the answer is we paid over two hundred something thousand dollars.
Q. That is immaterial.
A. No, it isn't. We tried. The answer is no, we couldn't verify. (T., 51)"