[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12039
Non-Argument Calendar
_____

D.C. Docket No. 8:12-cv-1124-JDW-TBM


SEAN BARBER, an Individual,
KRISTINA BARBER, an Individual,

Plaintiffs - Appellants,


LISA CANTRELL-BOLLWECK,
an Individual, et al.,                                    Plaintiffs,


versus


AMERICA'S WHOLESALE LENDER,
a New York Corporation,
BANK OF AMERICA N.A.,
a National Banking Association,
JOHN DOES,
1-X,
ABC CORPORATIONS,
1-X,
XYZ PARTNERSHIPS,
1-X, et al,

Defendants – Appellees,


 CENTRAL PACIFIC MORTGAGE COMPANY, etc., et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 21, 2013)

Before MARCUS, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Sean Barber and Kristina Barber ("the Barbers") appeal the district court's dismissal of their complaint seeking rescission or reformation of their loan with Defendant America's Wholesale Lender ("AWL"). On appeal, the Barbers argue that the district court erred when it found that their complaint (1) alleged no injury-in-fact sufficient to establish standing and (2) otherwise failed to state a plausible cause of action. After a careful review of the record, we affirm.

I.

This case began on May 18, 2012, when a group of individual borrowers, including the Barbers, sued their lenders, seeking rescission or reformation of their respective loans. The First Amended Complaint alleged that at the time the borrowers got their loans, they expected they were entering into a "traditional borrower-lender relationship." According to the borrowers, this relationship requires the presence of a lender with an economic interest in the loan and full authority to amend the terms of the loan at all times.

2

The borrowers alleged that instead, their loans were securitized, which destroyed this traditional borrower-lender relationship because their loans were now being serviced by loan servicing companies instead of lenders. The borrowers stated that loan servicing companies lack the same authority possessed by the original lender to modify the terms of their loans. Beyond that, the borrowers also alleged that loan servicing companies operate under different economic incentives than lenders because loan servicing companies are paid to provide services rather than maximize the total value of the loan. Given these facts, the borrowers alleged that their loans were invalid under a theory of unilateral mistake and asked for the district court to rescind their loans completely or to reform their loans to disallow securitization.

The district court severed and dismissed all of the claims except for the one brought by the Barbers against AWL. On December 31, 2012, AWL moved to dismiss this last claim. In its motion to dismiss, AWL attached the promissory note and mortgage that the Barbers executed with AWL. In two separate places, these documents advised the Barbers that the promissory note could be sold or transferred to a third party. The first paragraph of the promissory note states:

> I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

3

Similarly, paragraph 20 of the mortgage, titled "Sale of Note; Change of Loan Servicer; Notice of Grievance" states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument . . . .

The district court granted AWL's motion and dismissed the complaint without prejudice, giving the Barbers an opportunity to file a second amended complaint within ten days.  The Barbers did not file a second amended complaint, and this appeal followed.

## II.

The Barbers first contest the district court's finding that the First Amended Complaint failed to establish an actual or imminent injury sufficient to confer standing.  Specifically, they point to their First Amended Complaint, where they alleged that they "would like to modify the terms of their Loan" but they "have learned that they have no lender with whom to negotiate."  The Barbers argue that these allegations are sufficient to establish standing.

"We review issues of standing de novo."  Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla., 641 F.3d 1259, 1264 (11th Cir. 2011).  Standing has three components, and we have held that it is the plaintiff's burden to plead and prove each of these components with a "fair degree of specificity."  Steele v. Nat'l

Firearms Act Branch, 755 F.2d 1410, 1414 (11th Cir. 1985).  First, the plaintiff must show that he has suffered an "injury-in-fact."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992).  Second, the plaintiff must demonstrate a causal connection between the asserted injury-in-fact and the challenged action of the defendant.  Id.  Finally, the plaintiff must show that "the injury will be redressed by a favorable decision."  Id. at 561, 112 S. Ct. at 2136 (quotation marks omitted).  These requirements are the "irreducible minimum required by the Constitution" for a plaintiff to proceed to federal court.  Ne. Fla. Chapter Assoc. Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 664, 113 S. Ct. 2297, 2302 (1993).

The first requirement of standing—injury-in-fact—consists of an "invasion of a legally protected interest which is (a) concrete and particularized, as opposed to merely abstract, and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560, 112 S. Ct. at 2136 (quotation marks and internal citations omitted); see E.F. Hutton & Co. v. Hadley, 901 F.2d 979, 984 (11th Cir. 1990) ("Plaintiffs in the federal courts must have a personal stake in the outcome of the case, and must allege some threatened or actual injury resulting from the putatively illegal action.  Abstract injury is not enough.") (quotation marks and internal citations omitted).

5

The district court properly granted AWL's motion to dismiss because the First Amended Complaint fails to allege any legally protected interest that has been invaded by AWL. The plaintiffs cite to no authority suggesting that they have a legally protected interest in negotiating with a lender rather than a loan servicing company. Neither can they point to any legally protected interest in having a lender who is inclined to agree to a modification. See Cox Cable Commc'ns, Inc. v. United States, 992 F.2d 1178, 1182 (11th Cir. 1993) ("No legally cognizable injury arises unless an interest is protected by statute or otherwise."). In fact, the plain language of the loan specifically contemplates that AWL could sell or transfer the loan to any third party, not just to other lenders. Given that parties to a contract are generally bound to its written terms, it is hard to see how the Barbers suffered any particularized injury when AWL exercised a right explicitly granted to it in the agreement. See Murphy v. Courtesy Ford, L.L.C., 944 So. 2d 1131, 1134 (Fla. 3d DCA 2006) ("[A] party to a contract is not permitted to avoid the consequences of a contract freely entered into simply because he or she elected not to read and understand its terms before executing it or because in retrospect, the bargain turns out to be disadvantageous.") (quotation marks omitted).

Even assuming the Barbers have a legally protected interest, the First Amended Complaint does not show that this interest is actually or imminently threatened. The Complaint states that the Barbers "have been and continue to be

6

significantly harmed" because they would like to modify the terms of their loan. It does not allege, however, that the Barbers have tried but failed to modify their loan. Nor does it allege that the Barbers's loan servicing company lacks the authority to modify their loan. Rather, the Barbers merely speculate that their loan servicing company will refuse to negotiate with them, relying on a document published by Wells Fargo which states that loan servicing companies "typically" do not have the power to make any alterations to the existing loan. Without any allegations that their injuries are actual and imminent rather than conjectural and hypothetical, the Barbers lack standing to bring this cause of action. See Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n, 226 F.3d 1226, 1229 (11th Cir. 2000) (complaint failed to set forth a particularized injury because it failed to allege how the defendant's actions have burdened them or operated to their detriment); Lujan, 504 U.S. at 564, 112 S. Ct. at 2138 ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.").

The Barbers argue that it is reasonable to conclude from the Amended Complaint that they have attempted and failed to modify their loan. This Court, however, cannot "speculate concerning the existence of standing, nor should we imagine or piece together an injury sufficient to give plaintiff standing when it has

7

demonstrated none." Miccosukee, 226 F.3d at 1229–30. It is the responsibility of the plaintiff to clearly and specifically set forth facts sufficient to establish standing. Whitmore v. Arkansas, 495 U.S. 149,155, 110 S. Ct. 1717, 1723 (1990). "A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." Id. at 155–56, 110 S. Ct. at 1723. Because the First Amended Complaint did not sufficiently allege that the Barbers had suffered an injury-in-fact, we agree that the complaint should have been dismissed without prejudice for lack of standing.

## III.

Next, the Barbers argue that the district court improperly found that the Amended Complaint lacked factual allegations sufficient to state a claim. The Barbers argue that the First Amended Complaint alleged a facially plausible claim for both rescission and reformation under a theory of unilateral mistake.

We review de novo a district court's grant of a motion to dismiss the complaint for failure to state a claim. American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1288 (11th Cir. 2010). This Court accepts the allegations of the complaint as true and construes them in the light most favorable to the plaintiff. Id.

## A.

8

Under Florida law, a plaintiff must adequately plead six facts in order to state a cause of action for rescission of a contract:

> (1) [t]he character or relationship of the parties; (2) [t]he making of the contract; (3) [t]he existence of fraud, mutual mistake, false representations, impossibility of performance, or other ground for rescission or cancellation; (4) [t]hat the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission; (5) [i]f the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible; [and] (6) [l]astly, that the moving party has no adequate remedy at law.

Billian v. Mobil Corp., 710 So. 2d 984, 991 (Fla. 4th DCA 1998).  The district court properly dismissed the First Amended Complaint because the Barbers did not allege all of these required facts.

First, the Barbers failed to allege that they promptly rescinded the contract and notified AWL of their rescission after discovering their mistake.  See Rosique v. Windley Cove, Ltd., 542 So. 2d 1014, 1016 (Fla. 3d DCA 1989) (rescission improper where testimony at trial revealed that plaintiff was aware of mistake but elected to proceed on the contract); Rood Co. v. Bd. of Public Instruction of Dade Cty., 102 So. 2d 139, 141 (Fla. 1958) ("[Plaintiff] must allege facts which show that upon discovery of the mistake he, with reasonable promptness, denied the contract as binding upon him and that thereafter he was consistent in his course of disavowal of it.").

The Barbers argue that there was no need to allege this fact because they retained attorneys and filed a complaint against AWL. They provide no authority, however, to support this argument, which fails logically, in any event. If the mere filing of a complaint was sufficient to constitute reasonably prompt notice, this requirement would be met every time a plaintiff filed suit, functionally eviscerating the notice requirement. The better view of Florida law is that plaintiffs must affirmatively allege in their complaint that they rejected the contract in a "reasonably prompt fashion" after discovering a mistake. See Rosique, 542 So. 2d at 1016. The First Amended Complaint fails because it does not allege this fact.

Second, nowhere does the First Amended Complaint allege that the Barbers offered to restore any benefits from the loan to AWL. See Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co., 761 So. 2d 306, 313 (Fla. 2000) ("A prerequisite to rescission is placing the other party in status quo."). The Barbers argue that this allegation is not necessary because they are not required at the pleadings stage to tender the proceeds of their loans back to AWL. But this is too simplistic a view. Even though the Barbers may not be obligated to return the proceeds of their loan back to AWL when they file suit, Florida law requires plaintiffs to plead that they actually did or are willing to return the defendant to the status quo. See Bank of N.Y. Mellon v. Reyes, ___ So. 3d ___, ___, 2013 WL 1136449 at *3 n.3 (Fla. 3d. DCA March 20, 2013) (rescission not possible where there is no allegation that

10

plaintiffs agreed to, or actually did, return the defendant to the status quo ante by returning proceeds of loan and benefits received therefrom to the defendant bank). Without any statement alleging that they are willing to return AWL back to the status quo, the Barbers' complaint fails to state a claim for rescission.

Finally, the Barbers did not allege that they have no adequate remedy at law. See Punie v. Achong, 765 So. 2d 823, 824 (Fla. 4th DCA 2000) (affirming directed verdict for defendant where plaintiff failed to meet burden of pleading and proving that she had no adequate remedy at law).  Because the First Amended Complaint fails to show why the Barbers's injuries could not be remedied through an action at law, their equitable action for rescission was properly dismissed.  See Collier v. Boney, 525 So. 2d 971, 972 (Fla. 1st DCA 1988) ("[A] fundamental requirement necessary for rescission of a contract is that the moving party has no adequate remedy at law. . . . [W]ith an adequate remedy at law available to appellee, the grant of his prayer for rescission of the agreement in this case was improper relief.").

Given that the Barbers failed to allege several key elements of a claim for rescission in the First Amended Complaint, the district court properly dismissed the complaint without prejudice and gave the Barbers an opportunity to cure the defects by amending their complaint.

B.

11

The Barbers similarly failed to plead a claim for reformation. To state a cause of action for reformation under Florida law, the complaint must allege that a contract fails to express the agreement of the parties as a result of (1) a mutual mistake or (2) a unilateral mistake by one party coupled with the inequitable conduct of the other party. Romo v. Amedex Ins. Co., 930 So. 2d 643, 649 (Fla. 3d. DCA 2006). "The rationale for reformation is that a court sitting in equity does not alter the parties' agreement, but allows the defective instrument to be corrected to reflect the true terms of the agreement the parties actually reached." Circle Mortg. Corp. v. Kline, 645 So. 2d 75, 78 (Fla. 4th DCA 1994). As a result, a unilateral mistake is generally not a basis for reformation. Kartzmark v. Kartzmark, 709 So. 2d 583, 585 (Fla. 4th DCA 1998). A written contract will not be reformed due to unilateral mistake unless there is clear and convincing proof of fraud or inequitable conduct by the other side. Robinson v. Wright, 425 So. 2d 589, 589 (Fla. 3d. DCA 1982); see Nordberg v. Green, 638 So. 2d 91, 93 (Fla. 3d. DCA 1994) ("If one's mistake is due to his own negligence and lack of foresight and there is absence of fraud or imposition, equity will not relieve him.") (parenthetically quoting Graham v. Clyde, 61 So. 2d 656, 657 (Fla. 1952)).

Beyond that, allegations of mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). This rule states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances

12

constituting fraud or mistake." Fed. R. Civ. P. 9(b). In the fraud context, for example, we have stated that:

> While Rule 9(b) does not abrogate the concept of notice pleading, it plainly requires a complaint to set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.

FindWhat Investor Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011).

The First Amended Complaint fails to meet the requirements of Rule 9(b) because it does not allege with particularity the circumstances constituting the Barbers's alleged mistake. The Barbers do not precisely point to the time, place, or person who made the statements or omissions that led to their mistake. Also problematic is that because the First Amended Complaint originally asserted claims against a number of lenders, the Barbers do not even have any specific factual allegations relating to AWL's conduct. See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1381 (11th Cir. 1997) ("[I]n a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud.") (quotation marks omitted); Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1069 (11th Cir. 2007) (characterizing complaint as an extreme example of a "shotgun pleading" because district court had to "wade through a great deal of extraneous material that addressed fraud in

13

the . . . industry as a whole"). Given the lack of specificity in the First Amended Complaint, the district court properly dismissed the complaint without prejudice.

Finally, the Barbers did not allege inequitable conduct on the part of AWL. The Barbers argue that AWL made no efforts of any kind to educate the Barbers that their loan would be securitized and serviced by a loan servicing company. Again, however, the text of the agreement specifically contemplated that the loan might be transferred or sold to a third party, including a "Loan Servicer." Under these circumstances, the Barbers cannot argue that their unilateral mistake was caused or encouraged by AWL's fraud or inequitable conduct. See Feldman v. Kritch, 824 So. 2d 274, 277 (Fla. 4th DCA 2002) (no unilateral mistake where plain meaning of the agreement was unambiguous and not subject to any other construction or interpretation); Ayr v. Chance, 372 So. 2d 1000, 1001 (Fla. 4th DCA 1979) ("[C]lear and unambiguous terms of a release . . . may not be avoided upon a claim of unilateral mistake.").

## IV.

Because we agree with the district court that the Barbers' First Amended Complaint (1) alleged no injury-in-fact sufficient to establish standing and (2) failed to state a plausible cause of action for rescission or reformation, we affirm the district court's dismissal of the Barbers' complaint without prejudice.

**AFFIRMED**

14