328 So.2d 448 (1976)
UNIJAX, INC., a Florida Corporation, Appellant,
v.
FACTORY INSURANCE ASSOCIATION, Etc., et al., Appellees.
No. X-122.
District Court of Appeal of Florida, First District.
March 1, 1976.
Rehearing Denied April 1, 1976.
*449 John B. Chandler, Jr. and G. Kenneth Norrie, of Rogers, Towers, Bailey, Jones & Gay, Jacksonville, for appellant.
Delbridge L. Gibbs, of Marks, Gray, Conroy & Gibbs, Jacksonville, John W. Morrison, of Clausen, Miller, Gorman, Caffrey & Witous, Chicago, Ill., for appellees.
BOYER, Chief Judge.
This is an appeal from a Final Summary Judgment, and a subsequent order denying a motion for consideration, entered by the Circuit Court of Duval County. The real issue, though not so framed by any party hereto, is whether appellant (as distinguished from its subsidiaries) sustained an insured loss under a certain policy of insurance issued by appellee, Factory Insurance Association.
It is axiomatic that summary judgment may not be used as a substitute for trial and that if the pleadings, depositions, answers to interrogatories, admissions, affidavits and other evidence in the file raise the slightest doubt upon any issue of material fact then a summary judgment may not be entered. (Connell v. Sledge, Fla.App. 1st 1975, 306 So.2d 194) We must, therefore, in order to resolve the issues presented by this appeal, examine the uncontroverted evidence in the light of those principles of law.
The litigation giving rise to this appeal was commenced, and at all times has been maintained, by appellant (Unijax) on its own behalf, to recover under a business interruption policy issued by appellee (FIA) for a loss Unijax claims to have sustained. In each count of its six count Complaint directed against FIA, (Count VII was later amended as to defendant, Womble, only), appellant alleged an August, 1969, fire loss to a paper mill in Elizabeth, Louisiana, and that it (Unijax) did "own and operate said paper mill through its subsidiaries". Appellant alleged further that "as a direct result of said fire loss, Unijax sustained a business interruption loss of $4,447,361.00". The amount claimed to be due from FIA to Unijax, after credit for a prelitigation payment of $3,494,874.00, is $952,487.00.
FIA asserted defenses to each count of the Complaint alleging inter alia, that:
1. Unijax sustained no loss insured against under the policy sued upon; and alternatively,
2. By reason of a coinsurance clause in the policy, FIA's liability is limited to, and cannot exceed, that amount paid under its policy prior to the commencement of suit.
The Circuit Court entered its summary judgment based upon its finding that Unijax *450 has not sustained an insured loss; i.e. that Unijax's business had not been interrupted by the Louisiana fire.
It is important that we emphasize that the issues raised by the parties, and therefore herein resolved, do not relate to whether the subject policy afforded coverage (except as to the dispute relative to the coinsurance clause) for the fire loss, nor as to whether appellant's subsidiaries have a viable claim. Since those issues are not raised, we do not address them.
The insurance contract, which forms the basis for this litigation, identifies the insureds as:
"Jacksonville Paper Company and all subsidiary and affiliated companies as normally constituted whether owned or leased, Elizabeth, Louisiana".
The coverage afforded by the policy, (i.e. the subject of the insurance), is delineated throughout the contract as follows:
"Subject to all its provisions this Policy insures against loss resulting only from the necessary interruption of business conducted by the Insured on premises situated: within the area located on both side of Main Street and westerly of Highway Route No. 112 in Elizabeth, Allen County, Louisiana."
It is readily apparent from the foregoing provisions of the policy that in order for Unijax (successor to Jacksonville Paper Company) to have a claim under the policy it (Unijax) must have suffered a loss resulting from interruption of its business conducted on the described premises in Louisiana. This is necessarily so because the subsidiaries of Unijax (as well as its affiliated companies) are also insureds and they (not Unijax) are entitled to a claim for their losses, if any, within the coverage of the policy.
The designated insureds under the policy sued upon, their relationship inter se and to the property described in appellee's policy, are as follows:
Unijax, Inc., a Florida corporation, appellant herein, is the successor to the corporation heretofore known as Jacksonville Paper Company, a Florida corporation. (There is no contention that Unijax does not enjoy the same protection under the policy as that afforded its predecessor.) Unijax is a wholly-owned subsidiary of IU International Corporation and is the parent of Calcasieu Paper Company and Southern Maid Paper Company. (Neither Unijax, nor its predecessor, were ever authorized to do business in Louisiana; the location of the fire which has given rise to this litigation.) Calcasieu Paper Company (Calcasieu) is a Louisiana corporation not admitted to do business in Florida. It is a subsidiary of Unijax, and was, together with Southern Maid Paper Company, the owner of the property affected by the subject fire. Southern Maid Paper Company (Southern Maid) is a Florida corporation, admitted and doing business in Louisiana. IU International Corp. (IU), formerly International Utilities Corporation, is a Maryland corporation, which, at times relevant, had its offices in Philadelphia, Pennsylvania, its principal place of business being in Wilmington, Delaware. IU has literally hundreds of other subsidiaries. One of those subsidiaries is an operations controlling company, which is known as International Utilities Management and Services Corporation, (Management & Services Company), located in Philadelphia, Pennsylvania. The function of the Management and Services Company was inter alia, to provide consulting assistance and "to see that the subsidiaries were well-run and profitable".
In 1968, IU acquired Jacksonville Paper Company and all its subsidiaries, including Calcasieu and Southern Maid. Thereafter, IU caused the name of Jacksonville Paper to be changed to Unijax. From December of 1968, up through and including the date of the fire, Management & Services Company, on behalf of the parent IU, had the power to exercise complete control over *451 Unijax (Jacksonville Paper), Calcasieu and Southern Maid.
In military terms, the "chain of command" between the above-named companies from top to bottom was: IU had the "power" of control over Management & Services Company, which had the power of control over Unijax, which had the power of control over its subsidiaries Calcasieu and Southern Maid, which had the power of control and owned the property damaged by the fire, which was located in Elizabeth, Louisiana. It was that fire which resulted in the business interruption losses, which are the subject of this action by Unijax.
The amount of the policy in force on the date of loss, and at all times prior thereto, was determined by Reports of Values (business interruption work sheets) filed on behalf of Calcasieu and Southern Maid only. No reports of business interruption values were filed prior, or subsequent to, the loss for Unijax or Jacksonville Paper.
Following the fire in August of 1969, at the insured premises in Louisiana, interruption of business losses were incurred. When the parties attempted to adjust the losses a disagreement arose as to the application of a coinsurance provision in the policy. FIA acknowledged, however, notwithstanding the coinsurance penalties, that it did incur obligations on account of the fire. To the end of satisfying its obligations, FIA sought agreement as to the amounts of the losses sustained on the Calcasieu and Southern Maid properties. Upon agreement as to the extent of the business interruption losses sustained as a result of the fire, the parties agreed that the maximum amount recoverable under the policy was $4,447,361.00. It was then determined that if, as FIA contended, the coinsurance provision was applicable, the recovery would in the aggregate, be reduced by $952,487.00. The sum of the uncompensated loss was arrived at by reducing the recoverable loss of Calcasieu by $695,609.00 and of Southern Maid by $256,878.00. FIA, thereupon, paid $3,494,874.00. The difference between the amount paid ($3,494,874.00) and the maximum agreed to be recoverable ($4,447,361.00) is the amount claimed by appellant in this lawsuit.
As of the date of the post-loss agreement, August 20, 1970, it was understood by all concerned that the loss and penalty calculations were predicted upon and limited to business interruption losses of Calcasieu and Southern Maid. The source of all dollar amounts referred to in the agreement came from information furnished as to the business interruption losses of Calcasieu and Southern Maid. Unijax never did business in Louisiana, and it owned no property in Louisiana affected by the fire.
The agreement for payment, which was between FIA and Unijax, hereinabove referred to concluded with the following paragraph:
"4. Except as specifically provided herein, nothing contained in this Agreement is intended to waive or modify the conditions and requirements of the policy or in any manner to change or modify the coverage afforded by the policy, nor shall this Agreement constitute or be construed to constitute a waiver or relinquishment of any of the rights of Factory and its member companies or Unijax under the policy."
Subject to the payment by FIA pursuant to said agreement of $3,494,874.00, the suit giving rise to this appeal was commenced; followed by motions directed to the pleadings and extensive discovery, which was, among other things, directed to an attempt to determine the intertwining corporate relationships between the super-parent, IU, its intermediaries, its out of state subsidiaries, including Unijax and the Unijax subsidiaries in Louisiana.
On November 12, 1973, an official of IU, one Keber, was deposed in Philadelphia. His deposition was not corrected and filed until December 31, 1973. Within *452 60 days, thereafter, FIA filed its Amended Answer alleging that Unijax had not sustained an insured loss as a result of the fire in Elizabeth, Louisiana. Consistent with its original pleadings, appellant (Unijax) maintained it had sustained a business interruption loss. At no time prior to the motion for summary judgment did appellant allege or otherwise contend that anyone other that it (Unijax) sustained a business interruption loss as a result of the subject fire.
In each count of its Complaint, appellant bottoms the theory of its recovery upon the insurance contract, the occurrence of the August, 1969 fire, and its allegation that it, Unijax, "owned and operated a paper mill in Elizabeth, Louisiana ... through its subsidiaries, Calcasieu Paper Company, Inc. and Southern Maid Paper Company." As already observed, the policy afforded coverage to multiple insureds: Unijax (Jacksonville Paper), Calcasieu and Southern Maid, all being separate insureds under the policy. The latter two corporations together with other entities, including IU, fall within the category description "subsidiary and affiliated companies".
Unijax, Calcasieu and Southern Maid being separate entities, and each separately insured, (though under the same policy) the rights of one under the policy are separate and independent of the rights of the others. In Gordon Chemical Co. v. Aetna C. & S. Co., 358 Mass. 632, 266 N.E.2d 653 (1971), the defendant-insurer issued a business interruption policy naming three corporations as insureds. As a result of fire, one of the insureds (Gordon Chemical) was unable to carry on its manufacturing operations. The business of the three insureds was interrelated and the management functions of Gordon Chemical and that of another corporate insured (Hammond Plastics) were performed by the same persons. In rejecting the contention that the three corporations should be treated as one for insurance purposes, the Court, in language especially applicable to the case at bar, stated:
"The defendant further argues that the three corporations in question should be treated as one single corporation for the purposes of the insurance policy. If this is done, no loss was sustained. The defendant argues that since Hammond, Gordon, and Gordon Realty are owned and controlled by the same persons, operating branches of one business, each of which was interdependent with the other, and insured for one amount under one policy with the defendant, they are one single insured and that their interests appear and are in fact the same. The short answer is while their interests may appear to be, they are not in fact the same. * * *
"Although the corporations had common management, the employees of Gordon otherwise were different persons from the employees of Hammond. Separate books of account for each company were kept by different individuals. Gordon lost net profits after the fire. Hammond had an increase in profits after the fire.

"`Ownership of all the stock in several corporations by one person does not create a single unit or justify a disregard of separate corporations. * * * Different corporations usually are distinct entities in law. It is only where the corporation is a sham, or is used to perpetrate deception to defeat a public policy, that it can be disregarded.' New England Theatres, Inc v. Olympia Theatres, Inc., 287 Mass. 485, 493, 192 N.E. 93, 97. `The ownership of all the stock and the absolute control of the affairs of a corporation do not make that corporation and the individual owner identical, in the absence of a fraudulent purpose in the organization of the corporation.' M. McDonough Corp. v. Connolly, 313 Mass. 62, 66, 46 N.E.2d 576, 579. Galdi v. Caribbean Sugar Co., 327 Mass. 402, *453 407-408, 99 N.E.2d 69. My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 233 N.E.2d 748. There is no justification here for disregarding the separate existence of each of the corporations named in the policy. They were as a matter of law separate and distinct legal entities when the policy was entered into, when the fire occurred and thereafter." 266 N.E.2d 653, 657. (Emphasis supplied)
The holding of the court in Gordon Chemical, supra, that claims of various entities, even though interrelated, must be treated separately, and that the rights of each must be maintained in separate actions, is in accord with Florida law. (Kassner v. Travelers Ind. Co., Fla.App.3rd 1973, 285 So.2d 686) In the latter case, our sister court said:
"The fact that separate independent causes of action under an insurance contract may have arisen and accrued to two different parties or entities from a single wrong or under one contract, does not preclude, but on the contrary requires their bringing separate actions thereon. Atlanta & St. A.B. Ry. Co. v. Thomas, 60 Fla. 412, 53 So. 510." 285 So.2d 686, 687. (Emphasis supplied)
There being three separate and distinct corporate entities, Unijax, Calcasieu and Southern Maid, each of which must maintain its own action to recover for its own loss, it is manifest, as determined by the trial court, that absent establishment of a transfer of rights by Calcasieu and Southern Maid to Unijax, Unijax must establish, in its own right, its own entitlement under the contract sued upon. In derogation of this precept, appellant seeks to recover in its own name on behalf of corporations which did business in Louisiana and from whom it has not received, nor does it claim to assert, any derivative rights. The Court below found, based upon the admissions of appellant appearing in responses to Requests to Admit and in depositions, that Unijax (Jacksonville Paper) did not own property in Elizabeth, Louisiana, on the date of the loss and that it was never authorized to do business in Louisiana. It is thus apparent that the business of Unijax was not "conducted ... on premises situated ... in Elizabeth, Allen County, Louisiana." Unijax could not, therefore, have sustained a "loss resulting ... from... the necessary interruption of its business" by the fire, which occurred in Elizabeth, Louisiana, in August of 1969.
The record establishes that the only connection between Unijax on the one hand, and Calcasieu and Southern Maid and the fire damaged property on the other, is appellant's ownership of stock in Calcasieu and Southern Maid. The only manner, therefore, in which appellant was affected by the fire was a "possible" diminution in the value of its stock in its subsidiaries. Nowhere in FIA's policy is coverage found for a paper loss due to the diminution of an insured's stock holdings in a subsidiary, or any other corporations.
Appellant's argument that it was doing business in Louisiana "through its subsidiaries, Calcasieu Paper Company and Southern Maid Paper Company" must also be rejected on the basis of other well settled legal precepts: The relationship of parent and subsidiary is not of itself sufficient to constitute doing business by the parent in the state where the subsidiary functions. Consolidated Textile Co. v. Gregory, 289 U.S. 85, 53 S.Ct. 529, 77 L.Ed. 1047 (1933); Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925); Edwin Raphael Co. v. Maharam Fabric Corp., 283 F.2d 310 (7th Cir.1960); Berkman v. Ann Lewis Shops, 246 F.2d 44 (2nd Cir.1957); Harris v. Deere & Co., 223 F.2d 161 (4th Cir.1955).
Consistent with the foregoing, courts have uniformly held that a parent company is not liable for the torts of its subsidiaries, *454 unless the subsidiary is operated as a "mere instrumentality" of the parent. Taylor v. Standard Gas and Elec. Co., 96 F.2d 693 (10th Cir.1938) reversed on other grounds, 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939). The "mere instrumentality" rule is rarely applied and only under special circumstances, for it runs contrary to established principles of corporate identity.
"The instrumentality rule should only be invoked after mature consideration and caution. Indiscriminate application would destroy the purpose of the corporate law." Brown v. Margrande Compania Naviera, 281 F. Supp. 1004, 1006 (E.D.Va. 1968). (Emphasis supplied)
The tests to be applied for the instrumentality rule were set out in Steven v. Roscoe Turner Aeronautical Corp., 324 F.2d 157, 160 (7th Cir.1963):
"In order to establish that a subsidiary is the mere instrumentality of its parent, three elements must be proved: control by the parent to such a degree that the subsidiary has become its mere instrumentality; fraud or wrong by the parent through its subsidiary, e.g., torts, violation of a statute or stripping the subsidiary of its assets; and unjust loss or injury to the claimant, such as insolvency of the subsidiary." 324 F.2d 157, 160.
None of the three elements above referred to have been alleged, much less established, by appellant sub judice. The facts established by the record, even when viewed in the light most favorable to appellant, conclusively show that Calcasieu and Southern Maid are not the "mere instrumentality" of Unijax, as that concept has been defined by law. Neither ownership of all of the stock of a subsidiary, nor common officers and directors, nor both combined, are sufficient per se to justify "Piercing the corporate veil". (See St. Petersburg Sheraton Corp. v. Stuart, Fla.App.2d 1970, 242 So.2d 185)
Additional facts, which must be present to invoke the Instrumentality Rule, have been variously described "as direct intervention" in the subsidiary's affairs (Kingston Dry Dock Co. v. Lake Champlain Transportation Co., 31 F.2d 265, 267 (2nd Cir.1929)); the "act of operation" of the subsidiary's business (Berkey v. Third Avenue Ry. Co., 244 N.Y. 84, 155 N.E. 58, 61 (1926)); or "the exercise of control, not the opportunity to exercise control". (Brown v. Margrande Compania Naviera, supra, at 1006) Nothing of the kind is present in this case.
Appellant's next argument is founded upon its claim that it is the real party in interest. Clearly, the argument of real party in interest, in the context of this case, has as its necessary predicate the right of a parent corporation to absorb the rights of its subsidiaries with the resulting divestiture in the subsidiaries of any cause of their cause of action. To sustain such a theory, this Court must ignore the separate identities of the corporations and the judicial mandate that their respective rights under appellant's policy "requires their bringing separate actions thereon". (Kassner v. Travelers Ind. Co., supra)
Further, even acceptance of appellant's theory of the law requires rejection of Unijax as the real party in interest: Unijax argues in its brief that it is the real party in interest, as it is the party "ultimately" entitled to the benefits of the insurance; i.e. that the party ultimately entitled to the insurance proceeds is the real party in interest. If Unijax, as parent of Calcasieu and Southern Maid, is a beneficiary of any monies which might be due to its subsidiaries, then it is clear that the parent of Unijax, IU, and "affiliated" company is the "ultimate" beneficiary, and IU, not Unijax, is the real party in interest.
Appellant's third argument, that appellee is estopped from asserting that Unijax *455 did not sustain an insured loss, is necessarily founded upon the proposition that matters of coverage (as distinct from contentions of forfeiture) are subject to the doctrines of waiver and estoppel. This is an erroneous view of the law, which has been rejected by Florida courts. Six L's Pack. Co., Inc. v. Florida Farm Bur. Mut. Ins. Co., Sup.Ct.Fla. 1973, 276 So.2d 37 affirming Fla.App.4th 1972, 268 So.2d 560; Hayston v. Allstate Ins. Co., Fla.App.3rd 1974, 290 So.2d 67; Kaminer v. Franklin Life Ins. Co., 472 F.2d 1073 (5th Cir.1973); Johnson v. Dawson, Fla.App.3rd 1972, 257 So.2d 282; and see cases collected in 1 A.L.R.3d 1139 and Supplement.
In Six L's Pack. Co., Inc., supra, the Florida Supreme Court, in considering a value reporting form policy, found for the insurer, and in so doing, adopted as its ruling, the decision of the District Court of Appeal. One of the issues before the courts on review was the same question confronting this Court, to wit: whether the doctrines of waiver or estoppel are applicable to matters of coverage. The Court of Appeal answered this question in the negative stating:
"The general rule is well established that the doctrine of waiver and estoppel based upon the conduct or action of the insurer (or his agent) is not applicable to matters of coverage as distinguished from grounds for forfeiture. 18 Fla.Jur. Insurance § 677, and 43 Am.Jur.2d Insurance § 1184. State Liquor Stores, #1 v. United States Fire Ins. Co., Fla.App. 1971, 243 So.2d 228; Johnson v. Dawson, Fla.App. 1972, 257 So.2d 282. See also Alaska Foods, Inc. v. American Mfr's Mut. Ins. Co., Alaska 1971, 482 P.2d 842; Commonwealth Ins. Co. of New York v. O. Henry Tent & Awn. Co., 7 Cir.1961, 287 F.2d 316. In other words, while an insurer may be estopped by its conduct from seeking a forfeiture of a policy, the insurer's coverage or restrictions on the coverage cannot be extended by the doctrine of waiver and estoppel." 268 So.2d 560, 563 (1972). (Court's emphasis)
To the same effect in Hayston v. Allstate Ins. Co., supra, where the plaintiff claimed that the defendant's failure to participate in an arbitration proceeding estopped the insurer from asserting lack of coverage as a defense.
The rationale for the rule that waiver and estoppel are not applicable to matters of coverage has been succinctly explained as follows:
"While waiver and estoppel have been held applicable to nearly every area in which an insurer may deny liability, the courts of most jurisdictions agree that these concepts are not available to broaden the coverage of a policy so as to protect the insured against risks not included therein or expressly excluded therefrom. The theory underlying this rule seems to be that the company should not be required by waiver and estoppel to pay a loss for which it charged no premium, and the principle has been announced in scores of cases involving almost every conceivable type of policy or coverage provision thereof." 1 A.L.R.3d 1139, 1144.
We further note that the agreement for prelitigation payment, which is the touch stone for Unijax's waiver and estoppel argument, provides in paragraphs 3 and 4 as follows:
"3. Factory agrees to pay and Unijax agrees to accept $3,494,874, provided, however, that such payment and acceptance shall not be regarded as a final settlement of the rights of the parties and shall be deemed to be without prejudice to the right of Unijax to contest the applicability to the loss of the 80% co-insurance clause and to the payment of any amount less than $4,447,361, and without prejudice to the rights of Factory to defend against such claim. Unijax may enforce its said rights by an action *456 at law in a court of competent jurisdiction or otherwise as may be advisable, and it is agreed that the time to institute any such action or proceedings be and the same hereby is extended to January 18, 1971.
"4. Except as specifically provided herein, nothing contained in this Agreement is intended to waive or modify the conditions and requirements of the policy or in any manner to change or modify the coverage afforded by the policy, nor shall this Agreement constitute or be construed to constitute a waiver or relinquishment of any of the rights of Factory and its member companies or Unijax under the policy." (Emphasis supplied)
Upon considering the foregoing provisions of the agreement the learned trial judge concluded as a matter of law:
"The language of the Agreement does not sustain plaintiff's claim of estoppel, but rather Para. 4 thereof specifically provides that it does not waive or modify any conditions or requirement of the policy or the coverage thereof. Based on the depositions, admissions on file and the admissions of plaintiff's counsel during argument of the motion, all figures in the Agreement relate to losses and expenses sustained by Calcasieu and Southern Maid and do not represent any loss or expense of Unijax."
In summary, inasmuch as it appears that the subject policy of insurance insures multiple parties and that the interruption of business losses were sustained not by appellant but by separate corporate entities, Calcasieu and Southern Maid, it is clear that appellant Unijax, did not sustain an insured loss as a result of the fire on the properties of its subsidiaries in Louisiana.
Appellant further argues that its stock in its subsidiaries, Calcasieu and Southern Maid, was diminished in value and that therefore appellant sustained the loss. Assuming, without deciding, that such assertion by appellant is accurate, it nevertheless clearly appears that appellees' policy of insurance does not cover stock losses. As already repeatedly observed, that policy "insures against loss resulting only from the necessary interruption of business conducted" on the described premises in Louisiana. It is therefore abundantly clear that the learned trial judge did not err in entering the summary final judgment in favor of FIA and against Unijax.
We next consider appellant's attack upon the summary judgment in favor of appellee Womble. Count Seven of appellant's complaint, as amended, alleges that appellee Womble was engaged by Unijax as its agent to procure a business interruption insurance policy to adequately protect Unijax and perform certain other functions such as providing expert counsel and advice concerning the business interruption policy. In entering the summary final judgment, the trial judge found that Womble was entitled to summary judgment on the same ground advanced by FIA, viz: that Unijax suffered no insured loss under the policy. Appellant argues in its brief that "Womble is charged in the complaint as amended with having negligently failed to procure and maintain adequate business interruption insurance for Unijax. If Womble procured a policy upon which Unijax could not recover in the event of a loss, such as one in which Unijax had no insurable interest as the trial court found was here the case, the coverage obtained by Womble was hardly `adequate'". In so arguing, appellant has missed the point of the controversy. By appellants own argument, as above quoted, Womble was allegedly charged with the responsibility of procuring and maintaining on behalf of Unijax adequate business interruption insurance. Inasmuch as any loss sustained by Unijax was a result of diminution of the value of its stock in its subsidiaries and not as a result of any interruption of the business of Unijax then it necessarily follows *457 that since Unijax suffered no loss as a result of interruption of its business it suffered no loss as a result of any failure or fault on the part of Womble. The learned trial judge was imminently correct when he entered summary judgment for Womble also.
Affirmed.
RAWLS and SMITH, JJ., concur.