673 So.2d 62 (1996)
COASTAL HEALTH CARE GROUP, INC., a North Carolina corporation, Birth Centers of America, Inc., a Florida corporation, and Birth Centers of Florida, Inc., a Florida corporation, Appellants,
v.
Marc I. SCHLOSSER, M.D., and Amy S. Schlosser, Appellees.
No. 95-0956.
District Court of Appeal of Florida, Fourth District.
March 20, 1996.
Rehearing Denied May 22, 1996.
*63 Leonard K. Samuels of Berger & Davis, P.A., Fort Lauderdale, and James P. McLoughlin, Jr., and James E. Dillon of Moore & Van Allen, PLLC, Charlotte, NC, for appellants.
Spencer M. Sax and Anthony M. Lawhon of Sachs & Sax, P.A., Boca Raton, for appellees.
PER CURIAM.
This is an appeal from an order granting appellee's motion to stay arbitration. We affirm in part, reverse in part and remand.
In 1993, appellees sold their stock in Birth Centers of America, Inc., a Florida corporation, which was the sole general partner in Boca Women's Center, Ltd., a Florida limited partnership, to Birth Centers of Florida, Inc., a Florida corporation ostensibly created for the purchase by its parent, Coastal Health Care Group, Inc., a North Carolina corporation. Coastal was not a party to the stock purchase agreement and is only mentioned in Article IV of the Agreement, entitled Conduct of Business Pending Claim. Article IX of the purchase agreement provided:

ARTICLE IX ARBITRATION
Unless the parties shall agree otherwise, all claims, disputes and other matters in question between the Sellers and the Purchaser that arise out of or are related to this Agreement or the breach hereof, shall be decided by arbitration in accordance with the Commercial Rules of the American Arbitration Association then obtaining. The foregoing agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and a judgment may be entered upon it in *64 accordance with applicable law in any court having jurisdiction thereof.
Notice of the demand for arbitration shall be filed in writing with the other party, and with the American Arbitration Association. The demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

Arbitration proceedings shall be held in Durham, North Carolina. The arbitrator's award shall be in writing. The expenses incurred by the parties as the result of submission of matters to arbitration hereunder shall be paid by the parties as apportioned by the arbitration panel.
(Emphasis added).
On December 19, 1994, the lawyers for Coastal and its subsidiary purchaser, Birth Centers of Florida, Inc., sent a letter notice to appellees and their lawyers, as well as to Boca Women's Centers, Ltd., and the American Arbitration Association, pursuant to Rule 6 of the Commercial Arbitration Rules of the AAA. The claimants sought rescission, damages compensatory, treble and punitive attorney's fees and costs for violation of Florida, North Carolina, and Federal statutes.
On December 20, 1994, Coastal's lawyers served upon appellees, who are residents of Palm Beach County, a demand filed only on behalf of Coastal with the American Arbitration Association in Charlotte, North Carolina, requesting an arbitration hearing in Durham, North Carolina. The demand form recited: "Nature of Dispute," to which the demanding party filled in:
Clause is attached.[[1]]
Breach of stock purchase agreement, misrepresentation, North Carolina and federal securities laws.
In January 1995, appellees filed a three-count complaint, against Coastal, Birth Centers of Florida, Inc., and Birth Centers of America, Inc., two of which counts were for declaratory relief as to arbitration and the third of which was for damages arising out of an alleged breach of fiduciary duty. One month later, the trial court granted appellees' motion to stay arbitration against Coastal, Birth Centers of Florida, Inc., and Birth Centers of America, Inc.
Two issues were argued before the trial court and here, the first of which is that Damora v. Stresscon International, Inc., 324 So.2d 80 (Fla.1975), controls. There, the court said:
We hold that an agreement to arbitrate future disputes in another jurisdiction is outside the authority of the Florida Arbitration Code, Chapter 682, Florida Statutes, and such a provision renders the agreement to arbitrate voidable at the instance of either party.
Id. at 82 (footnote omitted). As can be seen from the arbitration clause of the agreement among the parties thereto, the arbitration was to take place in Durham, North Carolina.
Appellants contend, however, that Damora does not apply. Section 12.11 of the agreement among the parties thereto provides:

Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida.
They would have us conclude that a fair reading of Damora requires that section 12.11 distinguishes it. We disagree and would further point out that Damora had the following certified question and gave the following answer:
"WHERE AN AGREEMENT TO ARBITRATE FUTURE DISPUTES PROVIDES FOR ARBITRATION IN ANOTHER JURISDICTION (IN THIS CASE, NEW YORK), IS SUCH A PROVISION A REJECTION OF THE FLORIDA ARBITRATION CODE, CHAPTER 682, F.S., AS TO RENDER THE AGREEMENT TO ARBITRATE NOT BINDING UPON OR ENFORCEABLE IN THE COURTS OF THIS STATE?"
We have jurisdiction.

*65 The question is one of first impression in this state. We answer it in the affirmative. It is our opinion that under the contract terms in this specific case, the Florida Arbitration Code, Chapter 682, Florida Statutes, was rejected by the parties by reason of their agreement to arbitrate in New York City, New York. We hold the provision that arbitration was to take place in New York constituted a stipulation that the Florida Arbitration Code should not apply. See Section 682.02, Florida Statutes (1973).
Id. at 81-82 (footnote omitted). We are aware that Damora has the following additional language after the above quote:
The Florida courts have no statutory authority under Chapter 682 to compel arbitration in another jurisdiction. Further, the agreement between the parties failed to specify either that Florida law shall govern or that Florida arbitration procedure shall apply. The inference from the wording of the agreement is that New York arbitration law shall govern and the American Institute of Architects' standard form of procedure shall apply.
The rights of the parties under this arbitration provision stand and fall upon the contract terms, not the statutory arbitration procedure in this state.
Id. at 82. However, we cannot ignore the express holding of the case.
Appellees properly point out that Coastal, not a party to the stock purchase agreement, is the only party to file the "demand" for arbitration in North Carolina. We believe that the notice and demand must be read together so that the purchasing corporation, Birth Centers of Florida, Inc., was also an initiating party to the arbitration. Coastal, however, was not a party to the purchase agreement; nor was Birth Centers of America, Inc. Accordingly, the trial court was correct in not compelling appellees to arbitrate its dispute with Coastal and Birth Centers of America, Inc. As to them, we affirm.
The second issue presented to the trial court and here is the applicability of the Federal Arbitration Act. The trial court's order, as well as the transcript of the hearing before it, is void of any express conclusion on that issue. We believe the act applies and, therefore, reverse and remand as to Birth Centers of Florida, Inc.
This court has recognized that the Damora principle does not apply to valid and enforceable agreements to which the Federal Arbitration Act applies. Butcher & Singer, Inc. v. Frisch, 433 So.2d 1360, 1361 (Fla. 4th DCA 1983); see also Trojan Horse, Inc. v. Lakeside Games, 526 So.2d 194, 195 (Fla.3d DCA 1988); Old Dominion Ins. Co. v. Dependable Reinsurance Co., 472 So.2d 1365, 1367 (Fla. 1st DCA 1985). In 1984, the Supreme Court decided that section 2 of the Federal Arbitration Act applies in state as well as federal courts and withdraws the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration. Southland Corp. v. Keating, 465 U.S. 1, 12, 104 S.Ct. 852, 858-59, 79 L.Ed.2d 1 (1984) (section 2 held to preempt a provision of California Franchise Law that California courts interpreted as requiring judicial consideration of causes of action based thereon, rather than arbitration). The Court has also held that the Federal Arbitration Act creates a body of federal substantive law of arbitrability applicable to any arbitration agreement within the coverage of the Act and that body of federal law requires that "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Volt Info. Sciences, Inc. v. Stanford Univ., 489 U.S. 468, 475-76, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989); Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).
Through Southland and Moses H. Cone, it appears that the Court anticipated that state courts could not so easily declare arbitration clauses unenforceable even if there was a state based reason for doing so. Rather, pursuant to Southland, section 2 of the Federal Act was to supply a sort of safety net for arbitration clauses if the contract involved "interstate commerce." Southland, at 23, 104 S.Ct. at 861 ("Congress intended to foreclose *66 state legislative attempts to undercut the enforceability of arbitration agreements").
The parties agree that according to its plain terms, the Federal Arbitration Act applies only to "[a] written provision in ... a contract evidencing a transaction involving commerce.... 9 U.S.C. § 2. (emphasis supplied). Not surprisingly, the parties dispute whether the instant agreement "evidences a transaction involving commerce."
The statute defines "commerce" as "commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia...." 9 U.S.C. § 1. The Court's recent case of Allied-Bruce Terminix Co. v. Dobson, ___ U.S. ___, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), addressed the reach of the Federal Arbitration Act and how the phrase "transaction involving commerce" should be construed. After noting that some state courts and federal district courts have interpreted the Act's language as requiring the parties to a contract to have "contemplated" an interstate commerce connection, the Court held that such language should be read broadly. Specifically, the word "involving" is broad and is the functional equivalent of "affecting." at ___, 115 S.Ct. at 839. The Court reiterated its earlier pronouncement that the interstate commerce language should be read broadly to extend the Act's reach to the limits of Congress' Commerce Clause power. Id. at ___, 115 S.Ct. at 840; Perry v. Thomas, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987).
The Court then discussed whether the interstate transaction meant that the transaction had to turn out "in fact" to involve interstate commerce or whether the parties had to "contemplate" an interstate transaction. Dobson, at ___, 115 S.Ct. at 841. The Court concluded that a "commerce in fact" interpretation was more faithful to the statute than the "contemplation of the parties" interpretation which would require costly litigation.
Accordingly, the dispositive issue is whether the contract is "in fact" affecting interstate commerce. The trial court herein did not comment on this point.
At the hearing, appellants provided the court with an affidavit of Sally Lynch, Senior Vice President of planning and analysis at Coastal, purchaser's parent corporation, outlining the interstate nature of the transaction. Following are the "interstate" transactions:
(1) several meetings regarding the potential purchase of Birth Centers of America, Inc.'s stock took place at Coastal's North Carolina office;
(2) discussions with Schlosser took place by telephone across state lines;
(3) while Birth Centers of Florida, Inc., a Florida corporation, acquired the stock, it did so through its parent corporation Coastal, a Delaware Corporation with its principal place of business in North Carolina. See Article IV of the Stock Purchase Agreement.
(4) Coastal's North Carolina employees and residents were involved in the negotiations;
(5) pursuant to the agreement, the closing took place in North Carolina;
(6) Section 12.1 of the agreement lists the North Carolina address where all notices and communications made pursuant to the agreement should be sent to Birth Centers of Florida, Inc.
We conclude the contract in question affected interstate commerce. See United States v. Lopez, ___ U.S. ___, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995); Mesa Operating Ltd. Partnership v. Louisiana Intrastate Gas Corp., 797 F.2d 238 (5th Cir.1986).
On remand the trial court is to proceed in a manner consistent with this opinion.
GLICKSTEIN, POLEN and PARIENTE, JJ., concur.
NOTES
[1] The attached clause was Article IX quoted above.