872 So.2d 333 (2004)
AMERICAN INTERNATIONAL GROUP, INC., and AI Credit Corp., Appellants,
v.
CORNERSTONE BUSINESSES, INC., Cornerstone Team, Inc., Cornerstone of North Florida, Inc., Cornerstone Leasing, Inc., Stahl & Associates Insurance, Inc., and Patrick H. Mazza, Appellees.
No. 2D03-3532.
District Court of Appeal of Florida, Second District.
April 14, 2004.
*334 Robert E. Biasotti, John R. Blue, and Rachel A. Ramsey of Carlton Fields, P.A., St. Petersburg, for Appellants.
John W. Frost, II, and Peter W. Van den Boom of Frost Tamayo Sessums & Aranda, P.A., Bartow, for Cornerstone Businesses, Inc., Cornerstone Team, Inc., Cornerstone of North Florida, Inc., and Cornerstone Leasing, Inc., Appellees.
No appearance for Appellees Stahl & Associates Insurance, Inc., and Patrick H. Mazza.
CASANUEVA, Judge.
This is an appeal from a nonfinal order that determined entitlement to arbitration. Appellants are affiliated with corporations that are currently in dispute with certain Appellees. Appellants contend that the circuit court erred in finding that they have waived the right to arbitration. We agree and reverse.

Background Facts
The genesis of this case is two contracts: the first involved cancelled insurance coverage sought by Appellees, the Cornerstone entities (Cornerstone); the second, a failed arrangement for financing the premium payment required to acquire the insurance coverage. Appellant American International Group, Inc. (AIG) is the parent corporation of Appellant AI Credit Corp. (AICC) and of several other corporations, including National Union Fire Insurance Co. of Pittsburgh, PA and Commerce & Industry Insurance Co. (National Union), which are not parties to this lawsuit. Cornerstone and National Union executed a payment agreement in connection with Cornerstone's purchase of general liability, automobile, and worker's compensation insurance coverage from National Union.
The payment agreement required that the total premium amount, approximately $1.2 million, be paid by a date certain and that it was not contingent on any financing arrangement Cornerstone might subsequently *335 make; it also contained an arbitration clause covering disagreements concerning the amount of the insured's payment obligation. Cornerstone began negotiations for a separate financing agreement with AICC for the money it required to pay the premium soon due to National Union. Appellee Patrick H. Mazza, an employee of Appellee Stahl and Associates Insurance, Inc. (Stahl), was the insurance agent who brokered Cornerstone's agreement with National Union for insurance coverage and with AICC for financing the premium.
Cornerstone paid Stahl approximately $300,000 as a down payment for its insurance policies, but, ultimately, Cornerstone and AICC could not agree on financing terms. When National Union did not receive all the consideration to which it was entitled under the payment agreement, it cancelled Cornerstone's insurance for nonpayment of premium. Cornerstone demanded that Stahl calculate the premium it owed for the time when the policies were in force to determine if there was any money remaining from its deposit. When Stahl failed to return any money to Cornerstone, Cornerstone filed a complaint against Mazza, Stahl, AICC, and AIG on various contractual, statutory, and tort bases.[1]
AICC and AIG filed a joint answer and affirmative defenses to Cornerstone's complaint. Their answer did not assert National Union's contractual right to arbitration under the payment agreement because neither AIG nor AICC were parties to that contract. Thereafter, the parties entered into a lengthy period of settlement negotiations, but they could reach no accord. Shortly after the settlement negotiations collapsed, National Union served a demand for arbitration on Cornerstone pursuant to the payment agreement. National Union did not file a copy of that demand in this case as it is not a party here and, in fact, has never appeared in this case.
After National Union served its arbitration demand on Cornerstone, AIG and AICC filed a motion to stay the proceedings pending arbitration of the claims between Cornerstone and National Union. They argued that the issues in this litigation were inextricably intertwined with the issue of how much money was owed between Cornerstone and National Union, which they claimed was clearly subject to arbitration under the payment agreement. Cornerstone then filed a motion in response, objecting to any stay of the proceedings, and a few days later filed another motion styled "Emergency Motion To Dismiss And/Or Stay Defendant American International Group, Inc.'s Demand For Arbitration." In a footnote in this emergency motion, Cornerstone acknowledged that the demand was, in fact, filed by National Union, noting that National Union had filed its demand as a "wholly owned subsidiary of AIG, on behalf of itself and each related insurer that provided coverage to Cornerstone," and concluding that National Union "for all intents and purposes is the same as AIG." Cornerstone argued that AIG had waived its right to arbitration by filing an answer and that there was no right to arbitrate in the first instance because no contract was ever created.
*336 After a hearing on the motions, the circuit court denied National Union's demand for arbitration, denied AIG's and AICC's motion to stay pending arbitration, and granted Cornerstone's motion to dismiss AIG's demand for arbitration. This nonfinal appeal followed.

The Demand for Arbitration and Waiver
We begin first by noting that National Union served its demand for arbitration on Cornerstone pursuant to the payment agreement and did not file its demand for arbitration in this case. We emphasize that although National Union is a wholly owned subsidiary of AIG, the arbitration clause was contained within the payment agreement between Cornerstone and National Union, not AIG. Cornerstone argues that AIG is the same entity as National Union, or at least an agent, because of several factors. For example, an "AIG Risk Management" logo appeared at the top of the payment agreement's first page; the instructions specified that the payments under the agreement were to be remitted to AIG in New Jersey; and the signature box on the final page was signed by the authorized representative of National Union under a rubric that proclaimed, "For us, National Union Fire Insurance Company of Pittsburgh Pa, on behalf of itself and other members of American International Group, Inc., first listed above." Furthermore, Cornerstone points out, one of the cancellation notices National Union sent to it carried an AIG logo. We agree with AIG that on this record the logos do nothing more than denote the affiliated relationship of these companies. Florida law is clear that the use of a logo or trademark symbol alone cannot create an apparent agency. Mobil Oil Corp. v. Bransford, 648 So.2d 119, 120 (Fla.1995); Ilgen v. Henderson Props., Inc., 683 So.2d 513, 514 (Fla. 2d DCA 1996). Here, even though the payment agreement bears AIG's logo, the text of the agreement makes clear that the agreement is between Cornerstone and National Union. On its face, AIG is not a party to that agreement. The same holds true for the AIG logo on one of the four cancellation notices. It merely announces an affiliated relationship and does not establish a principal/agent relationship.
Furthermore, even though National Union is a wholly-owned subsidiary of AIG, this does not make the two corporations interchangeable for purposes of bringing or defending a lawsuit. A parent corporation and its wholly-owned subsidiary are separate and distinct legal entities. Gladding Corp. v. Register, 293 So.2d 729, 732 (Fla. 3d DCA 1974). As a separate legal entity, a parent corporation is not liable for torts committed by its subsidiary and cannot exercise the rights of its subsidiary. Unijax, Inc. v. Factory Ins. Ass'n, 328 So.2d 448, 453-54 (Fla. 1st DCA 1976). Similarly, a parent corporation is not bound by an arbitration clause in an agreement entered into by its subsidiary, Federated Title Ins., Inc. v. Ward, 538 So.2d 890, 891 (Fla. 4th DCA 1989), and a parent corporation cannot compel arbitration pursuant to an agreement between a subsidiary and the opposing party, Coastal Health Care Group, Inc. v. Schlosser, 673 So.2d 62, 65 (Fla. 4th DCA 1996).
The Fourth District's opinion in Federated Title succinctly explains the parameters of the relationship between parent and subsidiary that are relevant to this litigation:
Arbitration provisions are personal covenants, usually binding only upon the parties to the covenant. For instance, in a contract where one party is a corporation, its successor in interest is not usually bound to its terms. Karlen v. Gulf and Western Industries, 336 So.2d *337 461 (Fla. 3d DCA 1976). Similarly, a parent corporation which is not a signatory party to an agreement is not bound by its arbitration provision. Steinberg/W.F.I. Foods, Inc. v. D.C.M. and Associates, 522 So.2d 512 (Fla. 4th DCA 1988). Claims of various entities, even though interrelated, must ordinarily be treated separately. A parent corporation will not be held liable for the actions of its subsidiary unless the subsidiary is deemed to be a mere instrumentality of the parent. Unijax Inc. v. Factory Insurance Association, 328 So.2d 448 (Fla. 1st DCA 1976). For a subsidiary to be considered a mere instrumentality of a parent corporation, there must be: (1) control of the parent over the subsidiary "to the degree that it is a mere instrumentality." (2) parent committed fraud or wrongdoing through its subsidiary. (3) unjust loss or injury to a claimant, such as when the subsidiary is insolvent. Id. at 454. A mere instrumentality finding is rare. Id.

Federated Title, 538 So.2d at 891. The circuit court made no finding, and there has been no evidence presented to support such finding, that AIG and National Union fit into any of the three categories in Federated Title to deem National Union a "mere instrumentality" of AIG or an entity interchangeable with AIG.
Also, even though the premium payments under the agreement were to be remitted to AIG in New Jersey, that fact is insufficient to sustain Cornerstone's argument that the parent and subsidiary are one and the same. See Nat'l Indem. Co. of the South v. Consol. Ins. Servs., 778 So.2d 404, 408 (Fla. 4th DCA 2001) (holding plaintiff's payment of a renewal premium to the alleged agent did not establish an apparent agency). We further agree with AIG's reasoning that, on this record, the requirement to remit payments to AIG, if anything, would make AIG an agent of National Union for payment purposes only; it would not make AIG a principal for purposes of litigation.
As AIG, under the facts of this record, could not bind National Union or compel Cornerstone to arbitrate pursuant to the arbitration clause in the contract between Cornerstone and National Union, neither could it have waived National Union's rights to arbitration pursuant to that clause. See, e.g., Post Tensioned Eng'g Corp. v. Fairways Plaza Assocs., 412 So.2d 871, 874 (Fla. 3d DCA 1982) (holding that "[f]or an act to be inconsistent with the right to arbitrate and thus constitute a waiver of that right, it must repudiate the right of the party who does the act"). The circuit court erred, therefore, in deeming National Union's right to arbitration waived by AIG's actions in filing an answer and affirmative defenses in this lawsuit without raising the right to arbitration.
In addition to AIG's inability to waive arbitration pursuant to a clause in a contract to which it was not a party, as a matter of law and constitutional due process the circuit court's order denying National Union's request for arbitration is void. Chastain v. Uiterwyk, 462 So.2d 1212, 1213 (Fla. 2d DCA 1985) ("It is well settled in American jurisprudence that no court can make a decree which will bind anyone but a party."); see also Alger v. Peters, 88 So.2d 903, 906 (Fla.1956) ("It is so fundamental to our concept of justice that a citation of supporting authorities is unnecessary to hold that the rights of an individual cannot be adjudicated in a judicial proceeding to which he has not been made a party and from which he has literally been excluded by the failure of the moving party to bring him properly into court."). Although the circuit court properly recognized in its nonfinal order that it was denying National Union's demand for arbitration, and not AIG's, it erred in so doing. National Union and AIG are not *338 interchangeable and the demand was not filed in the circuit court; thus, the court was without jurisdiction to grant or deny the demand. Therefore, National Union's demand for arbitration remains viable as between it and Cornerstone.

Staying These Proceedings Pending Arbitration
Next, we find that the circuit court also erred by denying AIG's motion to stay this action pending arbitration of the dispute between Cornerstone and National Union. We agree with AIG and AICC that although the arbitration clause is found in a contract between Cornerstone and National Union, they are nonetheless entitled to a stay of this lawsuit pending resolution by arbitration of issues involved in the other dispute because those issues form the basis of this suit. Where the claims involving a third party are "based on the same operative facts and are inherently inseparable" from the claims subject to arbitration, Harvey v. Joyce, 199 F.3d 790, 795 (5th Cir.2000), the third party is entitled to a stay of proceedings pending arbitration even though it is not a signatory to the arbitration agreement and has no right to compel arbitration. The claims against AIG and AICC reasonably and logically derive from Cornerstone's ostensibly arbitrable claim[2] about how much it owes for the insurance coverage it enjoyed before the cancellation occasioned by AICC's and Cornerstone's failure to come to terms on the financing agreement for the premium for that coverage. We cannot say "that the resolution of the arbitrable claims will have no effect on the claims pending in court." Okeelanta Corp. v. United States Sugar Corp., 712 So.2d 814, 815 (Fla. 2d DCA 1998). Moreover, courts are required to indulge every reasonable presumption in favor of arbitration, recognizing it as a favored means of dispute resolution. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); see also K.P. Meiring Constr., Inc. v. Northbay I & E, Inc., 761 So.2d 1221 (Fla. 2d DCA 2000); Roe v. Amica Mut. Ins. Co., 533 So.2d 279 (Fla.1988).

Disposition
We recognize the plight that Cornerstone finds itself in, having paid what it claims is too much money for the short time that National Union provided insurance coverage, and we sympathize with its so far unsuccessful efforts to secure the return of any unused deposit, or even a calculation of the amount owed. However, as AIG correctly points out, Cornerstone was the master of its complaint and did not join its own insurers, the entities directly involved in its alleged loss, and we cannot now ignore that substantive defect on this record.
Because we conclude that the circuit court erred in denying AIG's and AICC's motion for stay pending arbitration, that its denial of National Union's demand for arbitration was a nullity, and that it erred in granting Cornerstone's emergency motion to dismiss AIG's motion for stay pending arbitration, we reverse the nonfinal order and remand for further proceedings in accordance with this opinion.
SALCINES and DAVIS, JJ., Concur.
NOTES
[1] The various theories advanced against Mazza, Stahl, AICC, and AIG were fraudulent and negligent misrepresentation, conversion, breach of fiduciary duty, violation of various insurance statutes in chapter 627, Florida Statutes (2002), and deceptive and unfair trade practices under chapter 501, Florida Statutes (2002). Cornerstone also sued Mazza, Stahl, and AICC for breach of contract.
[2] Because National Union is not a party to this lawsuit the propriety of subjecting the National Union/Cornerstone dispute to arbitration, per se, is not before us, and we cannot say with certitude that the claim Cornerstone has against National Union for return of unearned premiums is an arbitrable claim. It appears, prima facie, to be so, based on the wording of the arbitration clause in the payment agreement between them. Nevertheless, we make no judgment on the arbitrability of the claim.