[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-10577
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-24005-DPG

MARK A. TURNER,

Plaintiff-Appellant,

versus

HOMESTEAD POLICE DEPARTMENT,
CHARTER SCHOOLS USA, INC.,
KEYS GATE CHARTER SCHOOL,
CITY OF HOMESTEAD,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 18, 2020)

Before WILSON, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

After he was arrested for trespassing at his daughter's school, Mark Turner sued Keys Gate Charter School, Charter Schools USA, Inc., the City of Homestead, and its police department for defamation, false arrest, false imprisonment, malicious prosecution, false imprisonment of a child, spoliation of evidence, breach of contract, and a civil rights claim under 42 U.S.C. section 1983. Turner appeals from the district court's summary judgment in favor of the defendants. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Turner's daughter was an elementary student at Keys Gate Charter School in Homestead, Florida. School policy required parents to use a drive-through area when picking up elementary students and prohibited "walk ups." On September 6, 2016, Turner drove to school to get his daughter. He arrived fifteen minutes after dismissal had started. Turner approached a teacher and asked for his daughter. The teacher said Turner would have to wait fifteen more minutes. Turner instead walked into the school. A vice principal approached Turner, warned him that he was not allowed inside, and called the police. An officer arrived and told Turner to bring the issue to the principal's attention. Turner and his daughter left the school without further incident.

2

Over the next two weeks, Turner tried unsuccessfully to meet with the principal to discuss what happened on September 6.  On September 23, Turner entered the school and requested a meeting with the principal.  The school's director of student services brought Turner to a conference room.  In the presence of Officer Ducksworth of the Homestead Police Department, the director handed Turner a written trespass notice barring him from the school because of what happened on September 6.

Turner left the school with Officer Ducksworth.  He asked the officer to get his daughter, and Officer Ducksworth told Turner to wait outside.  Forty minutes later, Turner reentered the school to find the officer.  Seeing Turner inside the building, Officer Ducksworth arrested him.  Turner was charged in state court with trespass on school grounds, but the charges were dropped before trial.

Turner sued Keys Gate, Charter Schools USA, Inc., the City of Homestead, and the Homestead Police Department for defamation, false arrest, false imprisonment, malicious prosecution, false imprisonment of a child, spoliation of evidence, breach of contract, and a civil rights claim under 42 U.S.C. section 1983 for deprivation of his Fourth and Fourteenth Amendment rights.

The defendants moved for summary judgment, which the district court granted. The district court concluded that:  (1) the police department and Charter Schools USA were not proper parties; (2) the city and Keys Gate were entitled to

3

sovereign immunity on Turner's state tort claims because he did not give them pre-suit notice; (3) the city was not liable under section 1983 because Turner admitted that the city did not have a policy or practice that caused his arrest; and (4) there was no dispute of fact that Keys Gate did not materially breach a contract it had with Turner.  Turner appeals the summary judgment.

## STANDARD OF REVIEW

We review the district court's summary judgment de novo, viewing the evidence and all factual inferences in the light most favorable to the nonmoving party.  Essex Ins. Co. v. Barrett Moving & Storage, Inc., 885 F.3d 1292, 1299 (11th Cir. 2018).  A district court should grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## DISCUSSION

*The Police Department and Charter Schools USA Were Not Proper Parties*

The district court concluded that (1) the police department was not a proper party because it could not be sued under Florida law,  and (2) Charter Schools USA was not a proper party because it was a parent company, one of its subsidiaries was solely responsible for managing Keys Gate, and there was no evidence to pierce the corporate veil in order to hold the parent company liable.  As to the police department, Turner argues that the district court erred because his complaint imputed

4

liability to the city and therefore allowed him to sue its police department.  As to Charter Schools USA, he argues that Keys Gate is a subsidiary of Charter Schools USA, which makes the parent company vicariously liable for the actions of the school's employees.  Turner is mistaken on both counts.

As to the police department, its ability to sue or be sued is "determined by the law of the state in which the district court is held."  Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) (quoting Fed. R. Civ. P. 17(b)(3)).  Florida law provides that police departments lack "the capacity to sue and be sued."  Fla. City Police Dep't v. Corcoran, 661 So. 2d 409, 410 (Fla. Dist. Ct. App. 1995).  Because a police department is not an entity subject to suit, the district court did not err in granting the department's motion for summary judgment.

As to Charter Schools USA, under Florida law a parent company and its subsidiaries "are separate and distinct legal entities."  See Am. Int'l Grp. v. Cornerstone Bus., 872 So. 2d 333, 336 (Fla. Dist. Ct. App. 2004).  A parent company is not liable for the wrongful actions of a subsidiary absent a showing that the corporate veil should be pierced.  Peacock v. Gen. Motors Acceptance Corp., 432 So. 2d 142, 143 (Fla. Dist. Ct. App. 1983).  A party seeking to pierce the corporate veil must prove that "the subsidiary was a 'mere instrumentality' of the parent" and that "the parent engaged in 'improper conduct' through its organization or use of the subsidiary." Johnson Enters. of Jacksonville, Inc., v. FPL Grp., 162 F.3d 1290, 1320

5

(11th Cir. 1998) (quoting <u>Dania Jai–Alai Palace, Inc. v. Sykes</u>, 450 So. 2d 1114, 1117–21 (Fla. 1984)).  Such improper conduct occurs only where the subsidiary is "a mere device or sham to accomplish some ulterior purpose" or "where the purpose is to evade some statute or to accomplish some fraud or illegal purpose." <u>Id.</u> (quoting <u>Dania</u>, 450 So. 2d at 1117).

There was no dispute that Charter Schools USA did not supervise Keys Gate or its staff.  Rather, Charter Schools USA at Keys Gate, LLC was responsible for operating the school.  Keys Gate, LLC was exclusively responsible for hiring, employing, and managing the school employees at issue.  Turner presented no summary judgment evidence that the subsidiary was a "mere instrumentality" of Charter Schools USA.  And there was no evidence that Charter Schools USA used its subsidiary for an improper or fraudulent purpose.  Thus, there was no basis to hold Charter Schools USA liable for the actions of school staff that its subsidiary employed and supervised, <u>see</u> <u>Dania</u>, 450 So. 2d at 1117, and the district court did not err in granting Charter Schools USA's motion for summary judgment.[1]

*The City and Keys Gate Did Not Get Pre-Suit Notice of Turner's Tort Claims*

The district court concluded that the city and Keys Gate were entitled to sovereign immunity on Turner's state tort claims because he did not give them or

---

[1] We do not address the district court's other reasons for granting summary judgment in favor of the police department and Charter Schools USA:  (1) both defendants were entitled to sovereign immunity; and (2) Turner's claims against them failed on the merits as a matter of law.

the Florida Department of Financial Services pre-suit notice of his claims, and the time to do so had elapsed. Turner argues that the district court erred because he gave both defendants adequate pre-suit notice.

A sovereign cannot be sued without its own permission, Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp., 908 So. 2d 459, 471 (Fla. 2005), and Florida has enacted a limited waiver of its sovereign immunity for tort liability, Fla. Stat. § 768.28(1). To invoke this waiver, a plaintiff must provide a state agency or subdivision with written notice of a claim before filing suit:

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality, county, or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing . . . .

Fla. Stat. § 768.28(6)(a).

Florida courts strictly construe any waiver of sovereign immunity, see Manatee Cnty. v. Town of Longboat Key, 365 So. 2d 143, 147 (Fla. 1978), and section 768.28(6)(a) is no exception, see Levine v. Dade Cnty. Sch. Bd., 442 So. 2d 210, 212–13 (Fla. 1983). A valid pre-suit notice must reasonably put the agency or subdivision on notice of a claim, which includes "a demand for compensation for an injury." Smart v. Monge, 667 So. 2d 957, 959 (Fla. Dist. Ct. App. 1996). A letter describing an incident involving the agency or subdivision is not enough. Id.

7

Turner did not provide the city with pre-suit notice of his claims. Although he sent multiple letters to its police department, they failed to satisfy section 768.28(6)(a). On September 26, 2016, Turner sent a complaint to the department, which discussed his pending criminal case, accused Officer Ducksworth of misconduct, and requested that the department obtain video evidence from Keys Gate. It did not threaten a civil suit or demand compensation. In early 2017, Turner sent two more complaints to the department. The first focused on the actions of Keys Gate employees on September 6. The second addressed Officer Ducksworth's behavior on September 23. Once again, these complaints did not threaten suit or demand compensation. Because Turner did not comply with section 768.28(6)(a), and the three-year window to give notice has closed, the city was entitled to sovereign immunity on his state tort claims. See id.

We reach the same result as to Keys Gate. "All charter schools in Florida are public schools" and "part of the state's program of public education." Fla. Stat. § 1002.33(1). "[F]or purposes of tort liability, the charter school . . . [is] governed by [section] 768.28." Id. § 1002.33(12)(h). Turner therefore had to provide valid pre-suit notice to Keys Gate, but he failed to do so. In 2017, Turner sent a notice letter to Charter Schools USA's insurance company in Pennsylvania, enclosing a draft complaint. This letter was not sent to Keys Gate, nor was it sent to the Department of Financial Services in Tallahassee. Turner therefore did not satisfy

8

the strict requirements of section 768.28(6)(a), and the time to do so has passed.  See

Menendez v. N. Broward Hosp. Dist., 537 So. 2d 89, 90–91 (Fla. 1988) (even

directly noticing a state agency of a claim is insufficient pre-suit notice if the

department is not also noticed).  Keys Gate therefore did not waive its sovereign

immunity.  Accordingly, we affirm the district court's order granting summary

judgment as to Turner's state tort claims against the city and Keys Gate.[2]

*There Was No Evidence of Municipal Liability Under Section 1983*

Turner argues that Officer Ducksworth maliciously arrested him without

probable cause while acting under color of state law, in violation of the Fourth and

Fourteenth Amendments.  He argues that this gave rise to a valid claim under 42

U.S.C. section 1983 against the city.  The district court disagreed.  So do we.

A municipality cannot be held vicariously liable under section 1983 for a

constitutional violation committed by its officer.  Hoefling v. City of Miami, 811

F.3d 1271, 1279 (11th Cir. 2016) (citing Monell v. Dep't of Social Servs., 436 U.S.

658, 693-94 (1978)).  To establish municipal liability, a plaintiff must show that the

---

[2] Because we agree with the district court's ruling on sovereign immunity, we do not address its other reasons for granting summary judgment in the city's and Keys Gate's favor:  (1) Turner's false imprisonment claim failed because there was no dispute that he voluntarily entered the school conference room; (2) he lacked standing to bring his false imprisonment of a minor claim, and submitted no evidence from which a reasonable jury could conclude that his daughter's alleged restraint was unreasonable; (3) his false arrest and malicious prosecution claims failed because the undisputed facts established that Officer Ducksworth had probable cause to arrest him; (4) there was no independent cause of action for first-party spoliation of evidence under Florida law; and (5) Turner's defamation claim failed because he offered no evidence that the school employees had acted with the primary purpose of harming his reputation.

officer's action "alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers."  Monell, 436 U.S. at 690.  Typically, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."  City of Oklahoma City v. Tuttle, 471 U.S. 808, 823–24 (1985).

Turner did not allege that Officer Ducksworth's actions were the result of a municipal policy or custom. He admitted in deposition that he was unaware of the police department's arrest policies and could not take issue with them.  And Turner admitted that he was unaware of other incidents involving the department and similar facts.  Because Turner has not alleged or shown that a municipal policy or practice resulted in his arrest, the district court did not err in granting summary judgment on this claim.

## *Keys Gate Did Not Materially Breach a Contract*

Turner's final claim was that he signed a "parent contract" with Keys Gate, which required the school to follow the Florida Charter Educational Foundation's administrative policies.  He argues that these policies required the school's principal to hear his complaints.  Turner contends that Keys Gate's failure to conduct an administrative grievance hearing with the principal, the designated "parent

facilitator," was a breach of the parent contract. The district court granted summary judgment against Turner because he failed to establish a material breach of the contract. We agree.

Under Florida law, a state agency is liable for the breach of a contract that is express, written, and statutorily authorized. Pan-Am Tobacco Corp. v. Dep't of Corrs., 471 So. 2d 4, 5–6 (Fla. 1984). As in any breach of contract claim, the plaintiff must establish "a material breach of that contract" and resulting damages. Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009) (citing Friedman v. N.Y. Life Ins. Co., 985 So. 2d 56, 58 (Fla. 4th DCA 2008)).

Even if a contract existed between Turner and the school, he has failed to show that Keys Gate materially breached it. The school's policy handbook and its website both required an aggrieved parent to meet with "school administration." Although Keys Gate's website identified the principal as the "parent facilitator," none of its policies required the principal or parent facilitator to resolve a complaint. Thus, Keys Gate did not materially breach the contract when the school's director of student services met with Turner to discuss the September 6 incident. We therefore affirm the district court's order granting summary judgment on Turner's breach of contract claim.

**AFFIRMED.**

11